## West Branch Bank *against* Moorehead.

The intention of a payer to appropriate a payment to a particular debt may be collected from the nature of the transaction, and may be referred to the jury as matter of fact.

ERROR to the Common Pleas of *Lycoming* county.

This was an action of debt by the West Branch Bank against Thomas Moorehead, endorser of Daniel Musselman. The drawer of the note, Daniel Musselman, had another note in bank, on which William Donaldson, Esq., was the endorser, and before either was due, the bank discounted a draft for Daniel Musselman for $1000, and applied the proceeds to the Donaldson note. The defence in this case was, that the application should have been to the note now in suit. The particulars of the transaction are so clearly stated in the opinion of the court, as to require no further statement. But the matter assigned for error was, that the court below, (Donnell, President), instructed the jury, that the case was one in which it was the province of the jury to determine what was the intention of Musselman, when he left the draft for discount, as to the appropriation of its proceeds. The jury found a verdict for the defendant.

*Pleasants,* for plaintiff in error, referred to the former decision of this case in 3 *Watts & Serg.* 550.

*Comly,* for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—The rule that an intention to appropriate a payment to a particular debt may be collected from the nature of the transaction, is established by many authorities. It was laid down by Lord Ellenborough in *Newmarch* v. *Clay,* (14 *East* 244), in which a payment in good bills was applied to a particular debt previously paid by other bills which had been dishonoured and returned. Thus, too, in *Marryott* v. *White,* (2 *Stark R.* 101), payment of a sum exactly equal to the price of goods supplied, was held to be a specific appropriation to that debt. It is true, the inference of intention was assisted by the interest of the debtor, which coincided with the particular appropriation; but Lord Ellenborough seems to have thought no assistance necessary. But even an inference of intention from the interest of the party, is different from a declaration of it. So in *Shaw* v. *Picton,* (4 *B. & C.* 715, *S. C.* 7 *D. & R.* 201), general payments which had been

[West Branch Bank v. Moorehead.]

procured by the urgency of an attorney employed by the creditor as the agent of certain annuitants, were held to have been made on the foot of the annuitants, and not in discharge of a debt in the creditor's own right.　There are numerous cases in which an intention to appropriate in a particular way, has been collected from circumstances; among others, *Brett* v. *Marsh*, (1 *Vern.* 468); *Peters* v. *Anderson*, (5 *Taunt.* 596), and *Hammersly* v. *Knowlys*, (2 *Esp. R.* 665).　Now the assignment of error being, that the Judge left the cause to the jury with direction to ascertain whether Musselman, the drawer, intended that the proceeds of his draft should be applied to the note endorsed by the defendant, the question will be, whether there was evidence on which the cause might be so left.

The facts sworn to are, that when Musselman presented the draft for discount, he had two notes in bank of $800 each—the one endorsed by Donaldson, the other by Moorehead—which were fast approaching to maturity.　He was told by the cashier, that the directors had resolved not to increase the responsibilities of drawers; and that if the draft should be discounted, the proceeds would be put to his credit, and applied to his notes in the order of their falling due: at which he expressed great indignation.　In answer to an inquiry of the cashier, he repeatedly said, that the note endorsed by Moorehead would first fall due, and that he would make Donaldson pay the other, because he had drawn it and lent it to him for his accommodation; but that both should be attended to.　He left the draft for discount, and quitted the bank in a state of mental irritation at Donaldson and the directors, without being put right in regard to what was the fact, that it was the Donaldson note which would first become due; and the proceeds of the draft were applied to it by the cashier a few days afterwards.

Donaldson testified, that Musselman was largely indebted to him, and, being pressed for an arrangement by which the witness might get money on his draft or note, executed the note which the witness endorsed, and acknowledged to be for his use as well as to be payable by him when due.　This testimony is no further material, than as it may be thought to explain Musselman's declarations, which, however, are consistent with it.

Now, two things are observable in this—that Musselman left the bank believing from what had been said, that the proceeds of his draft would be applied to the Moorehead note; and that he declared they should not be applied to the Donaldson note.　He believed that the money would be applied to the Moorehead note according to the cashier's principle, because he thought it would first be due; and he evinced a dogged determination that it should not, in any event, be applied to the Donaldson note, by saying that he would make Donaldson pay it himself.　The consequence was a resulting appropriation to the Moorehead note; and had

the cause stood on this part of the evidence, the Judge might have charged, that it resulted by operation of law.

But, it was testified, that Musselman subsequently said to one of his creditors who expected to be paid out of the proceeds of the draft, " that it had been discounted, but he had got no money; that *they* had applied the money to the use of a note which he and Donaldson had in the bank." If the witness had stopped at this point, it might have been doubted whether the people at the bank, or they and Musselman together, had made the application; yet even that would not have served, for the burthen of proving a joint application would have rested on the bank. But the witness further testified, that " he complained a great deal how he had been used by the bank in the matter, by the money being applied to the Donaldson note; that Donaldson had the use of the money, and he ought to pay it, and that he (Musselman) ought not to have paid it." Could anything show more plainly, not only that he had not concurred in the bank's appropriation, but that it had been made against his will? His resignation was a growl; and his acquiescence, submission to irresistible force. There was no conflict of evidence as to the fact; and the Judge would still be at liberty to charge positively, that the money was legally appropriated to the Moorehead note.

But, of what avail against the endorser, would have been a ratification of the bank's appropriation in opposition to a previous one? The rule in *Wilkinson* v. *Sterne*, (9 *Mod.* 427); *Manning* v. *Westerne*, (2 *Vern.* 606); and *Peters* v. *Anderson*, (5 *Taunt.* 596), is, that the debtor must make the application at the time of payment, or not at all. It may doubtless be shifted by consent of the parties to affect themselves; but not to affect a third person. Then, if Musselman applied the draft to the payment of the Moorehead note, the latter was discharged the moment that the money was passed to his credit; and being so, its existence could not be recalled so as to restore the liability of the endorser: if he did not so apply it, the appropriation by the bank was good, and needed no ratification. In either way, the evidence was inoperative. The Judge, therefore, might have left no more to the jury than the credibility of the witnesses; and in leaving them to draw the inference of intention from the facts, he dealt mildly with the plaintiff. It is enough to sustain the judgment, however, that there was evidence of intention sufficient to raise the question, without inquiring whether the facts did not, of themselves, constitute a legal appropriation.

Judgment affirmed.