By the Court.
Mason, J.
The plaintiffs' right to recover in these cases, is resisted mainly on three grounds. It is contended,
I. That the power and authority of the defendants over roads and highways, and over the avenue in question, at the place where the injury complained of was sustained, is exercised by them only in their character of commissioners of highways ; and that no action will lie at the suit of an individual against commissioners of highways for not repairing.
II. That, admitting the defendants cán and do exercise the power of repairing streets and avenues, as a municipal corporation, and that Fourth Avenue, at the place in question, is a street, in the proper sense of the term ; yet, that no duty or obligation is imposed upon them in regard to repairing the streets; and,
III. That the injury complained of in this cause arose from non-feasance of the defendants; and that no action will lie against them for non-feasance merely—the remedy being by indictment.
The first objection contains two propositions. (1.) That the defendants are to be viewed, in this action, as commissioners of highways. (2.) That as such commissioners, they are not liable in damages, at the suit of a private person for not repairing. We shall consider the last proposition first.
Although there is no express adjudication on the question, yet we think it may be conceded, as the result of the several cases on this subject, that as a general rule, a private suit cannot be sustained, in this state, against the commissioners of high *297 ways, for neglect in not repairing the highways and bridges in their respective towns. We think the principles laid down by the courts, lead to this result, with regard to these officers, in the several towns in this state, who are subject to, and act under the provisions of the revised statutes, relative to highways ; (1 R. S. part I. chap. xvi. p. 501, &c.) They are exempted, however, from liability, we apprehend, not from any peculiarity in the nature of their office ; but by reason of the special provisions of the statute.
The first case in which this question appears to have been considered, is that of Bartlett v. Crozier, (17 John. 439,) in the court of errors. The suit was against the overseers of highways, for damages sustained by the plaintiffs in consequence of a bridge being out of repair. Chancellor Kent delivered the unanimous opinion of the court. He examined the provisions of the statute in defining the duties both of overseers and commissioners of highways ; and he came to the conclusion that no action would lie against the overseers, because they act only-under the orders of the commissioners, who alone are the responsible persons in respect to the repair of bridges ; and that if a private action . could be sustained at all, it could only be against the commissioners. The statute gave them the care and superintendence of the highways and bridges ; and made it their duty to cause them to be kept in repair. Yet the duty, he held, did not exist absolutely; but only when ihe commissioners had money in hand arising from penalties and forfeitures, or which had been paid over to them under the direction of the supervisors. And he came to the conclusion, that, inasmuch as the law had not supplied them with the pecuniary means, nor armed them with the coercive power to meet and sustain so heavy a responsibility, an action would not lie against them. These remarks, with regard to' the commissioners, it is true, were in some degree extra-judicial, as the action was against the overseers, and not against the commissioners, but they have been referred to, and adopted by the court, in subsequent cases. Thus, in the case of the People v. The Commissioners of Highways of Hudson, (7 Wend. 474,) the court quoted from the opinion of chancellor Kent, in Bartlett v. Crozier, as containing the true rule on this subject. That was an application for a *298 mandamus, to compel the defendants to build a bridge which would cost over $1,400. The application was denied ; for the reason, that the only sum at the disposal of the commissioners in any one year, was $250, for the repairs of all the highways and bridges in the town. The statute, it was remarked by the court, did not extend their duty beyond their means. The same point was ruled in the People v. Adsit, (2 Hill, 619,) which was an indictment against commissioners of highways, for neglect of duty in not repairing abridge. The indictment contained no averment that the defendants had funds, or other means to defray the expense ; and the court were of the opinion, that the existence of the funds or other specific means, was a condition precedent to the obligation of commissioners of highways to repair bridges. And in the more recent case of Barker v. Loomis, (6 Hill. 463,) it was held, that commissioners of highways were not bound to build or repair roads or bridges, until the necessary funds were provided for that purpose ; and that therefore there was no legal obligation on the town to pay moneys, which the commissioners had borrowed and expended in the repair of roads and bridges.
If the commissioners of highways are not bound to build or repair a road or bridge, and they cannot be compelled to do it, unless they have the requisite funds in their hands or under their control, and any debt they may contract for that purpose, is not binding upon the.town—it would seem to follow-, necessarily, that they cannot in such circumstances be made liable to a private individual for not repairing. Their liability is founded upon their duty. The same process of reasoning, however, which would excuse them from liability, when they have not the means at their disposal, and for that cause, would fasten the liability on them when they have the means. If they cannot be made liable, because they have not the means to repair ;—when they have the means, it would seem that their duty becomes absolute, and that they are liable for the consequences of neglecting to perform it. This principle was applied by the Supreme Court, in the case of Adsit v. Brady, (4 Hill, 638.) The defendant was a superintendent of repairs on the Erie Canal ; and the action was brought against him for damages sustained by the plaintiff, for not keeping the canal in good repair, and *299 removing obstructions to the convenient navigation thereof. The obstruction causing the injury, was a sunken boat, which obstructed the navigation, and rendered it unsafe, and had caused the plaintiff’s boat to sink. The defendant demurred to the declaration ; but the court decided that the superintendent was bound by the statute, to keep the section of the canal committed to his charge in repair, and that under the provisions of that statute, he had, or was in fault for not having, sufficient funds in his hands for that purpose ; that it was therefore his duty to repair, without any unnecessary delay—and they laid down the general rule in these terms : “ When an individual sustains an injury by the misfeasance or nonfeasance of a public officer, who acts, or omits to act, contrary to his duty, the law gives redress to the injured party, by an action adapted to the nature of the case and this principle, the court said, was well settled ;—and so well settled did it appear to them, that they did not adduce any authority in support of it.
Let us now apply the doctrine of these cases to the defendants, in their character of commissioners of highways. The general act in relation to the powers and duties of commissioners of highways, is in many of its provisions inapplicable to the city and county of New York, especially that section which limits the amount to be raised in any town for repairs of roads and bridges, to two hundred and fifty dollars. (1 R. S. 562, sec. 4.) But whether it is so or not, it is a fact of which we can take judicial notice, that the supervisors of the city and county of New York, are annually authorized by special acts of the legislature, to levy as much money as they deem necessary for repairs of roads, as well as for all other county purposes. This annual act has become as much a matter of course as the annual supply bill for the expenses of the state government; and, by referring to the laws of New York for 1849, (p. 402, ch. 276,) we find that the supervisors were authorized by an act, passed April 7th, of that year, to raise among other sums, one million four hundred and twenty-five thousand dollars and upwards, towards the contingent expenses of the city and county ; and among the items comprising this sum, we find in the proceedings of the board of aldermen and assistants, under date *300 of March 5th, 1849, an appropriation for roads for the year 1849, to the amount of twenty thousand dollars.
With respect, therefore; to the moneys .requisite to make the necessary repairs to this road, so as to have prevented the injury complained of by these plaintiffs, we feel authorized to apply the language of the court in Adsit v. Brady : The defendants either had the funds, or were in fault for not having them. They must, under the circumstances, be presumed to have had them, and if they had them not, it was for them to have shown that fact in excuse for their neglect.—(Adsit v. Brady, supra.)
If, then, the Fourth Avenue, at the place where this accident happened, is to be considered as a road, and the relation of the defendants to it is to be deemed that of commissioners of highways merely, we should be authorized upon principle to hold, that as the defendants had the means of repairing in their power, their duty to do so was absolute ; and that consequently, they are answerable in damages to any person who may have sustained injury by reason of their neglect or duty.
And this brings us to the second point in the defendants' first proposition, viz. whether the Fourth Avenue, at the place where the accident happened, was a highway or road, or a street or avenue. The distinction between these roads, and streets or avenues, is clearly taken in the statute. The Corporation of the city of New York have been, from very early periods of its history, commissioners of roads and highways, as was fully shown on the argument by the counsel for the defendants ; and they exercise over roads and highways on the island the powers of commissioners of highways. But the case of streets' and avenues is widely difieren t. These have been laid out and designated by commissioners of streets and roads, appointed for that purpose in 1807. When opened in pursuance of the provisions of law, the fee in them is vested in the defendants as a corporation, and the regulation of them is subject to their control as a municipal corporation. Section 175 of the general act relating to the city of New York, (2 R. L. 407,) gives to the defendants the power to regulate, pave, and to alter and amend, the streets of the city, as they think proper ; and to defray the expense thereof, by assessment upon the owners and occupants *301 of the adjoining lots, and upon the lots themselves; "and to enforce the payment thereof by distress and sale of the goods and chattels of such owners or occupants : and by a subsequent statute (Laws, 1816, p. 114,) they have power to sell the houses and lots, which may have been so assessed.
That the Fourth Avenue, at the place in question, was thus subject to the control of the defendants as a corporation, we think, is manifest. It is one of the avenues laid out by the commissioners appointed in 1807. The complaint alleges, and the answer does not deny, that it is one of the public streets of the city ; and it appears by the evidence, that the defendants, as a corporation, had exercised their power over it, by regulating it, and causing the curb and gutter to be set. We do not mean to be understood as saying, that a street or avenue, after it is opened by commissioners, according to the statute, and the fee vested in the corporation, may not be worked as a road by the defendants, as commissioners of highways, and the expenses defrayed out of the appropriation for roads; but the regulating and setting the curb and gutter, is a power exercised under the 175th section, by the defendants, in their municipal character, the expenses of which are defrayed by assessment,' as prescribed in that section. And this proceeding, we think, settles the Character of the defendants’ jurisdiction over it.
II. It is contended, however, that, admitting this to be the case, and that the corporation have the power to repair, yet that the duty to do so is not imposed upon them. The statute merely says, that “ it shall be lawful, &c., for them to regulate ” the streets, &c. ; and therefore, they are not liable. If no duty is imposed, there is clearly no liability. In the case of The Mayor of Albany v. Cunliffe, (2 Comst. 173,) where the liability of a corporation to an action of this nature was fully discussed, Cady, Justice, remarked, that he had found no case in which a person had been held liable for negligence in the performance of any work, unless his negligence was in violation of a contract, express or implied, or of a duty which was imposed on him by law.
The supreme court, however, in the case of the Mayor, &c., of New York v. Furze, in error, from the Common Pleas, (3 Hill, 612,) have given a construction to this 175th section, on" the *302 very point now under consideration. The action was brought in the court below by Furze against the Corporation for not keeping certain Sewers in proper repair, and the same objections were made, as in this case : 1. That there was no obligation on the part of the defendants to keep the sewers in repair: and, 2d, That the defendants were not liable to an action at law, either as commissioners of highways, or as a municipal corporation, for nonfeasance of themselves or their agents. With regard to the first objection, the chief justice, in delivering the opinion of the court, said, in relation to this same 175th section, which embraces sewers as well as streets : “ This statute is one of public concern, relating exclusively to the public welfare ; and though permissive merely in its terms, it must be regarded upon well settled rules of construction as imperative and peremptory upon the corporation. When the public interest calls for the execution of the power thus conferred, the defendants are not at liberty, arbitrarily, to withhold it. The exercise of the power then becomes a duty, which the corporation are bound to fulfil.” And after citing several authorities in support of these positions, he added, that “ the inference deducible from the various cases on this subject, seems to be, that where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory.”
We would not be understood to go the length of deciding, that whenever a street is opened by the corporation on paper, or by proceedings under the statute, it is their duty forthwith to regulate and pave it. There are several steps in the matter, all which, we apprehend, are in the legislative discretion of the corporation. It belongs to them in the exercise of their discretion, to determine, 1st, when a street shall be actually opened for the accommodation of the public; 2d, how it shall be worked, whether as a ■ road or street;" 3d, when it shall be regulated, and the curb and gutter set; and 4th, when it shall be paved ; but after they have actually opened it for the public accommodation, and by their acts invited the public to travel over it, the duty then becomes absolute to keep it in repair. There is- *303 solid reason in holding them to be thus bound. The fee of the streets is vested in them, they alone have the power as well as the means to repair : and if they are not bound to do so, there is no person or body corporate which can be called on to perform the office, but the comfort and security, and even the lives, of the multitudes which throng our streets, are entirely unprovided for.
It does not follow, from this doctrine, that the corporation is liable for every obstruction or- nuisance created by third persons, in the public streets, in violation of the city ordinances. There is a manifest distinction between the political powers of a municipal corporation, by virtue of which it exercises, in a subordinate degree, the functions of government, and those private and civil duties of a ministerial character merely, which devolve upon it, either as the tenure by which it holds its property, or in consequence of duties imposed upon it by the sovereign authority. The first are partly legislative and partly executive, and sometimes even judicial in their character ; and it is a fundamental principle, that officers exercising these high duties, cannot be held answerable for the mode in which they exercise them, except by impeachment or indictment. But with regard to the latter, there is no difference, as to liability, between a municipal corporation and an individual. (Bailey v. the Mayor of New York, 3 Hill, 521; the Rochester White Lead Company v. the City of Rochester, 3 Comstock, 463.) Neither is there any conflict between the doctrine of the present case, and that of Levy v. the City of New York, in this court, (1 Sandford’s Superior Court Reports, p. 465.) The suit in that case was brought against the city, for an injury sustained by the plaintiff in consequence of a swine running at large in the street, contrary to the corporation ordinance ; and we held that a municipal corporation authorized to make ordinances for the-good government of its streets and citizens, and which passes such ordinances, is not responsible for injuries arising from their neglect or violation. We might have added, if the case had called for it, that even if the corporation had neglected to pass such an ordinance, they would not have been liable to an individual for such neglect. And in entire accordance with this principle, we have decided at this term, in the case of Grif *304 fin v. the Mayor, Aldermen, and Commonalty of New York, that the defendants are not liable to a private individual, for injuries sustained in consequence of rubbish being thrown out on the street by third persons ; it not appearing that the corporation, or an)" of its officers, were notified of the fact, and required to have the rubbish removed ; in other words, that they are not answerable in this mode, for not making or not enforcing proper public regulations for the welfare of the city and the comfort of its inhabitants. But where an individual or corporation have a fixed and certain duty assigned to them, of a merely ministerial character, and the means placed at their disposal are sufficient for its performance, they are under obligations to perform it, at the risk of being made to answer for the consequences of their neglect.
III. The only remaining question is, whether the defendants are liable in a private action, or by indictment only. This question has been already answered indirectly. It is settled, however, by the most indisputable authority, that whenever an indictment lies for non-repair, an action on the case will lie at the suit of an individual sustaining any peculiar damage, arising either from non-feasance or-mal-feasance. Such was the decision in the Mayor of Lyme Regis v. Henly, which went from the court of common pleas, in England, to the king’s bench, and from thence to the House of Lords ; both appellate courts affirming the decision of the court below. (5 Bingh. 91; 3 Barn. and Adolph. 77; 1 Bing. N. C. 222.) Park, J., in delivering ■ the opinion of the judges in the House of Lords, said, that in order to make the -corporation liable, these four things must appear : 1. That the corporation were under a legal obligation to repair. 2. That such obligation was matter of so general and public concern, that an indictment would lie against the corporation for not repairing. 3. That the place in question was out of repair ■ and 4. That the plaintiff had sustained damage beyond the rest of the king’s subjects. All these requisites exist in the case before us. The obligation of the defendants to repair, we have shown is absolute. That an indictment would lie against them for not repairing, is conceded. The neglected state of the road was abundantly proved on the trial; -and the damages sustained by the plaintiffs have been settled -by the verdict of *305 the jury ; so that the case is brought precisely within the principles laid down by Mr. J. Park.
The doctrine of the Mayor of Lyme Regis v. Henly, has been recognised as good law by the supreme court in the cases of the Mayor, &c., v. Furge, and Adsit v. Brady, before referred to ; and also by the court of appeals, by Mr. Justice Cady, in the Mayor, &c., of Albany v. Cunliff (2 Comst. 165).
For these reasons, we think that the exceptions of the defendants to the decisions and charge of the judge were not well taken ; and that the plaintiffs are entitled to judgment.
Oakley, Ch. J., and Paine, J., concurred.