## THE COMMISSIONERS OF HIGHWAYS of the Township of Niles *vs.* NATHANIEL MARTIN.

Towns are not liable, either at common law or by statute, to actions for damages sustained by individuals, in consequence of the non-repair of bridges and highways. Nor can they, under Chaper 119, of the Revised Statutes, be subjected to any liability for such non-repair, through the means of an action against the Commissioners of Highways.

This was an action on the case brought against the Commissioners of Highways of the Township of Niles, as a *quasi*

Corporation, under the provisions of Chapter 119, of the Revised Statutes, to recover damages for injuries which the plaintiff alleged he had sustained, by reason of the non-repair of a certain bridge, part of a public highway, in that township. It was, in effect, a suit against the township; for by section seven of the chapter referred to, it is provided, that if the plaintiff recovers judgment in such a case, no execution shall be awarded thereon, but that the same shall be levied and collected as other township charges, and when so collected, shall be paid by the Township Treasurer.

The plaintiff below recovered judgment for $250 damages. The cause came into this Court by writ of error to reverse the judgment.

*E. Bacon*, for plaintiff in error.

*F. Muzzey*, for defendant in error.

By the Court, Douglass, J.

In England the liability to keep highways in repair, is of common right incumbent in general upon the parishes in which they respectively lie, but in some cases, it attaches (by prescription) to particular townships or other divisions of parishes, and occasionally to private individuals or Corporations, bound *ratione tenuræ*, or in right of their estates or franchises, to repair some particular highway. The case of bridges is differently provided for. The expense of maintaining these is incumbent, not on the parishes, but on the counties at large in which the bridges are situate. (3 *Steph. Com.*, 257; 1 *Russ. on Cr.*, 352, 388.) The civil divisions of England into counties, is of remote and undefined antiquity. So also is the division originally ecclesiastical, but now partly civil, into parishes. And the obligation of the former to repair bridges, and of the latter to repair highways, is founded upon prescription, which presupposes a legal origin beyond the memory of man, and is absolute and unqualified. Any

county, parish, Corporation or other party, thus bound to repair a bridge or highway, and neglecting the duty, is liable, at the common law, to an indictment.   (3 *Steph. Com.*, 259; 1 *Russ. on Cr.*, 352, 388.)   Against an individual or Corporation, bound to repair *ratione tenuræ*, or in right of their estates or franchises, an action on the case may be maintained by any individual who has suffered peculiar injury by any neglect to repair.   But ever since the case of Russell *vs.* The Men of Devon (2 *T. R.*, 667), it has been the settled law in England, that no such action would lie against a county or parish.   (*McKennon* vs. *Penson*, 18 *E. L. and Eq.*, 599; *S. C.* 25, *Ib.*, 457.)   As will appear, however, on an attentive perusal of these cases, they virtually concede that, on the general principles of the English Common Law, counties and parishes ought to have been sueable for neglect of duty as such, but have been held not to be sueable on grounds of convenience and justice ; because it was impossible to bring them into Court; because they were fluctuating bodies, and individuals might be made responsible for omissions of which not they, but others had been guilty; because if the damages were levied upon one or two, as they might be, there would be no practicable or effective way of compensating them by contribution from the rest ; and because, at the common law, they had no common property out of which the damages could be paid.

In this country, the construction of roads and bridges is, for the most part, accomplished through our township organizations : the counties contributing towards the construction of bridges, in cases where the expenses would be too onerous to be wholly borne by the townships in which they are situated.   Towns, with us, are bodies politic and corporate, capable of sueing and being sued (*R. S.*, *p.* 84, 85); but they have no corporate fund, out of which a judgment may be satisfied, and there is no statute, that I am aware of, which provides any mode for obtaining satisfaction of a judgment,

directly against a township. So that here some, though not all, the technical difficulties would exist in enforcing against them an obligation to repair, by civil action for damages, which exist in England, in enforcing such an obligation against parishes and counties. But, is any such obligation imposed on the townships? Towns, with us, are mere political organizations, created wholly by statute, for certain purposes of local government. They are vested with no franchises or special privileges for their own benefit. They have only such powers as the statute confers, and are sebject to no obligations, except such as are derived from statutory provisions. It is difficult to see how any common law obligation, the sole foundation of which is prescription and immemorial usage, can be made to attach to them. An obligation to construct and repair roads and bridges, can only be derived from the possession of such powers over their construction and repair, as the statute has conferred upon them. And the law will not impose an unqualified obligation, where the means of performing it do not exist. Now, the towns have power to choose Commissioners of Highways; but the statute, in express terms, gives to these Commissioners, when elected, the care and superintendence of the highways and bridges of the town, and confers upon them all the powers requisite for the execution of their trust. They are in no way responsible to the town, but are themselves a species of *quasi* Corporation, with power to sue and be sued; having legal succession, and deriving their authority, not through the town, but directly from the statute. The towns have no power to give the slightest direction or instruction to these officers, as to the performance of their duties. So the towns have power to raise money for constructing and repairing roads and bridges, but this power is limited to the raising of only $250 in any one year (*R. S., Ch.* 22, § 4), and can only be exercised at the annual township meeting. So highway labor may be annually assessed upon

persons and property within the township, but the amount to be assessed in any one year is limited (*Ib., Ch.* 23, §§ 4, 5), and the power to assess is vested exclusively in the Commissioners of Highways. Further: the power to raise money for the construction of bridges is vested, in part, in the Boards of Supervisors of the counties. (*Ib., Ch.* 27.) Looking at all the statutory provisions on the subject, we think they furnish no ground for the inference that it was intended that townships should be subject to any such broad and onerous obligation as is contended for.

The existence of any such obligation upon towns in the State of New York was denied in Morey *vs.* The Town of Newfane (8 *Barb. S. C. R.*, 645), and in Hitchcock *vs.* The Village of Plattsburgh (15 *Ib.*, 427), and the doctrine of these cases was recognized and approved by the Court of Appeals, in a decision of the latter case on appeal, which is not yet reported, but which I have had an opportunity of examining. These decisions we regard as settling the law on this subject in the State of New York, and they ought to have great weight in determining it with us, because our statutes respecting townships are almost identical with theirs.

In all the New England States, towns have, from an early period, been made liable by statute, in certain cases, to civil actions, for injuries sustained by individuals on account of the non-repair of highways and bridges ; but the uniform course of decisions there, has been, that no such liability existed independently of express statutory enactment : Mower *vs.* Inhabitants of Leicester (9 *Mass.* 247); Holman *vs.* Inhab. Townsend (13 *Metc.*, 297); Harwood *vs.* Lowell (4 *Cush.*, 310); Bailey *vs.* Scarborough (6 *Ib.*, 141); Sawyer *vs.* Northfield (7 *Cush.*, 494); Ried *vs.* Belfast (20 *Maine*, 246); Chedsey *vs.* Canton (17 *Conn.*, 474; 1 Verm., 353; 2 N. H., 105; and Hill *vs.* Richmond (2 *Wood. & M.*, 337), where Judge Woodbury says, such is the law in Rhode Island. A contrary doctrine prevails in Pensylvania. (*Dean vs. Milford Township*, 5

*Watts & Serg.*, 542; *Erie City* vs. *Schwingle*, 22 *Pa. State R.*, 384.) My researches, which have been somewhat extended, have disclosed scarcely a trace of the doctrine of these last decisions elsewhere ; and when we consider the frequency of injuries resulting from defects of highways and bridges, the absence of authority in most of the States upon the subject of the liability of towns for such injuries, furnishes the strongest evidence that they have not been generally understood to be liable. In deciding the case of Morey *vs.* the Town of Newfane, in New York, the Court say, that up to that period (1850) no precedent was known to exist of an attempt to assert any such liability in that State. Until now, we are not aware that any such attempt has been made here.

There is a long course of decisions tending to establish the doctrine, that a municipal or other corporate body, vested with powers and enjoying franchises and privileges for its own benefit, is liable to a civil action for any injury resulting either from its misfeasance, or that of its officers, or for the neglect of any duty which its charter or the law imposes. (*Henley* vs. *The Mayor of Linn, Regis.*, 5 *Bing.*, 91.; *S. C.*, 3 *Barn. & Ad.*, 77, *and* 1 *Bing. N. C.*, 222; *Riddle* vs. *Proprietors of Merrimack River*, 7 *Mass.*, 169; *Hudson* vs. *Mayor of New York*, 5 *Sandf.*, 289; *Smoot* vs. *Mayor of Wetumpka*, 24 *Ala.*, 112.) And it is the extent to which some of those cases have gone, especially in New York, in subjecting municipal Corporations to such liability, which has created the only doubt I have entertained in regard to the present case.

But the cases which have gone furthest in this direction, distinctly assert, that no such liability exists on the part of those minor political organizations, or *quasi* Corporations, such as towns and counties, whose corporate powers and functions are conferred without their solicitation for the benefit, not of themselves, but of the public at large. In

Hitchcock *vs.* the Trustees of the Village of Plattsburgh, the New York Court of Appeals, after a review of the authorities, say, that it is the acceptance of a special charter that makes the incorporated body liable to this action, and it is the want of such a charter that exempts the towns, unless they are especially made liable by statute under certain circumstances, as in Massachusetts.

If, as we think, towns are not by the common law liable in actions directly against them for damages sustained in consequence of the non-repair of bridges and highways, we are clearly of opinion that they cannot, under Chapter 119, of the Revised Statutes, be subjected to any such liability through the means of an action like the present, against the Commissioners of Highways. That chapter provides, that in certain cases, actions may be brought by and against certain county and township officers therein mentioned, and among them the Commissioners of Highways of the several townships, by their name of office, without naming them individually. They are authorized to sue in that capacity, "upon any contract lawfully made with them, or their predecessors, in their official character, and to enforce any liability or any duty enjoined by law to such officers, or to the body which they represent, or to recover damages for any injuries done to the property or rights of such officers, or of the bodies represented by them." This language would bear criticism on account of its want of perspicuity; yet I think the meaning is discernible. Section four, which assumes rather than declares that actions may be brought against such officers, by the same names in which they are authorized to sue, does not prescribe what actions may be brought against them, but section five sheds some light upon the intention of the Legislature, upon this subject. It provides that when any contract shall have been entered into, or any liability incurred, by or in behalf of any county or township, by any officer thereof, *within the scope of his authority*, the same remedies

may be had after the termination of his office, and process may be served in the same manner upon any successor of such officer, as if he had continued in office.

Reading these provisions in connection with the seventh section already referred to, which provides, that if any judgment shall be recovered against any township officers, in an action prosecuted by or against them in their name of office, no execution shall issue thereon, but the same shall be levied and collected as other township charges, it is quite clear that it was not the intention of the statute to subject the townships to any new liability, but merely so far as it relates to claims against townships, to remove doubts, difficulties, and inconveniences, which before existed in their enforcement. We think it does not authorize any action to be brought against township officers by their name of office, except for acts done, or upon contracts made by them, while acting within the scope of their official duty and authority. The present action is brought to recover damages caused by alleged neglect of official duty by the defendants, for which, if liable at all, they are liable individually, and not officially, as a *quasi* Corporation. See per Tallmadge, Senator, in Flower *vs.* Allen (5 *Cow.*, 670); 4 Hill 136; 3 Wend., 193.

This view of the statute will be found to derive some confirmation, if confirmation it needed, from the opinions delivered in Makinnon *vs.* Penson (18 *Eng. L. and Eq.*, 509); (S. C. 25,) *Ib.*, 457; which involved the construction of an English statute, providing that counties might sue and be sued in the name of the County Surveyor.

For these reasons, we are of the opinion that the judgment below ought to be reversed, with costs.

Present, and concurring, GREEN, COPELAND, JOHNSON, MARTIN, and PRATT, J. J.