LobiNG, J.,
concurring:
Tbe material facts are, tbat tbe claimants, from. 24th February, 1863, to tbe 3d day of March, 1864, distilled spirits at Peoria, in tbe State of Illinois, wbicb were inspected and marked there, and then, under tbe usual bonds for exportation, transported to different places in other districts and States .specified in tbe petition. While tbe spirits were in transportation portions of them were lost by leakage, and finally they were not exported, but were retained for sale. Tbe spirits thus became subject to duty, and tbe collector exacted tbe duty on tbe whole quantity found at tbe inspection, and refused to make an allowance for tbe leakages shown by tbe claimants, and bis action was affirmed by tbe Commissioner. Tbe petitioners claim here tbe allowance refused to them by tbe officers of tbe revenue.
Tbe 4Hth section of the act of 1862, c. 119, (12 Stat. L., 432,) authorizes distillers to transport their spirits under bonds for exportation, and then, at them election, to export them or to retain them for sale. And it provides tbat if tbe distillers elect to retain their spirits for sale they shall pay tbe duties assessed upon them at tbe inspection, and also interest on tbe *110 duties. It tlius protects tbe government from, loss, and places it and tbe distillers exactly as tbey would' bave stood if tbe duties bad been paid at tbe inspection. In tbis case tbe claimants used tbe privilege tbe statute' proffered them, and tbey paid, and tbe United States received, tbe price tbe statute fixes for tbe privilege.
Tben, by tbe proviso of tbe 12th section of the aet of 1863, c. 74, (12 Stat. L., 713,) tbe Commissioner of Internal Uevenue was authorized to make rules providing for deductions on account of leakage from tbe quantity of spirituous liquors subject to taxation under tbe act of 1862, not exceeding five per centum of tbe amount removed for sale. Now, when tbe leakages of these spirits occurred tbey were in transportation, under tbe provisions of tbe 47th section of tbe act of 1862, to be exported or retained for sale as might thereafter be determined. Tbe result shows that tbey were tben, in fact, being removed for sale, and tbey are now to be taken as spirits removed for sale, because tbe United States bave fixed that character upon them by subjecting them to taxation under tbe act of 1862. And'l think that, under tbe proviso above cited, it was tbe duty of tbe Commissioner to make rules providing for leakage of spirits transported under bond for exportation and tben retained for sale, as these were. But no such rules were made, and for that reason tbe claim of tbe petitioners for allowance was rejected by tbe collector, and afterwards by tbe Commissioner.
On tbis statement of tbe case tbe petitioners bave suffered loss from tbe official default of tbe Commissioner in omitting to make a revenue regulation required of him by statute, and for this tbe claimants bring this action against tbe United States.
I think tbe action cannot be maintained, because, by tbe law of agency belonging to governments, tbe United States are not liable for tbe official defaults or unlawful acts of their officers.
Tbis rule is founded on public policy, and therefore admits of no exception, and I think tbe authorities cited for tbe claimants in tbe cases before tbe court suggest no exception to it. In 9 How., 248, an officer authorized to sell lands for taxes assessed sold all tbe lots taxed belonging to one person, although tbe proceeds of tbe first two lots sold were more than sufficient to pay all tbe taxes assessed on all tbe lots; and it was held that tbe sale of tbe lots unnecessarily sold was void, and that tbe owner, therefore, could recover them in ejectment *111 against tbe purchaser at the tax sale. The case in 4 Wallace, 435, only decided that where county officers omitted to levy a tax laid for the collection of funds for the payment of a debt of the county, their performance of their duty ■ could be enforced upon them by a mandamus at the suit of the creditor.
Neither of these cases refer in any way to the liability of a government for the defaults of its officers, and I think the other cases cited are only apparently apposite. In 3 Hill, 612, 614; 5 Tilden, 193; 5 Johnson, 113; 1 Denio, 595; 5 Sandf., 289, it was held that the municipal corporation of the city of New York was liable for the omission of its officers to repair streets and common-sewers. But a municipal corporation, though it may be clothed with some of the political powers of a government, is a legal entity or person, and as such, when charged with duties merely ministerial, is a ministerial officer, and liable for the non-performance of such duties exactly as an individual ministerial officer would be; and it was on the ground that the repairs of streets and sewers were merely ministerial duties charged on the municipal corporation of the city of New York, that it was held liable in the cases cited. This is distinctly declared in the case of 5 Sanford, which closes the series of cases cited, and gives the reason of their decisions. The court say: “ There is a manifest distinction between the political powers of a municipal corporation, by which it exercises in a subordinate degree the functions of a government, and those private and civil duties of a ministerial character merely which devolve on it either as the tenure by which it holds its property, or in consequence of duties imposed on it by the sovereign authority. The former are partly legislative and partly executive, and sometimes even judicial, in them character; and it is a fundamental principle that officers exercising these high offices cannot be held answerable for the mode in which they execute them, except by impeachment or indict-, ment. But in regard to the latter, there is no difference as to liability between a municipal corporation and an individual.” (5 Samdford, 303.)
On this exposition of the cases cited, they only adjudge the liability of a ministerial officer for his own defaults; and their doctrine is, that a municipal corporation is liable for the nonperformance of ministerial duties charged upon it exactly as any other ministerial officer would be, but that so far as it *112 exercises tbe functions of a government in tbe use of political powers, it bas tbe immunities of a g’overnment. Now, tbe United States are a government only, and exercise only tbe functions of a government; and I tbink there is nothing in tbe doctrine declared, or in tbe language of tbe court, which suggests or countenances tbe idea that such a government, using-political powers only, is liable for tbe official defaults or unlawful acts of its officers.
Neither can it be claimed that tbe United States have received money which did not belong to them, and which they should refund; for the United States have received only tbe duty which was bylaw due to them from tbe distillers; and tbe allowance for leakage is a distinct thing from tbe duty, and is entirely independent of it. For tbe allowance may be due though no duties are payable, as on spirits exported; and where duties are payable, tbe claim for allowance depends on circumstances which may or may not happen after tbe duty bas attached. The allowance is in fact a mere bounty, by which tbe United States, in the liberality that may encourage manufacturers, assume a risk not belonging to them, but proper to tbe owner of tbe spirits. And the regulation of this bounty, as to its rate, tbe United States have intrusted to the discretion of tbe officer whose official position, knowledge, and experience especially qualify him for tbe duty, and this discretionary power is committed to him and no one else, and be, and no one else, can use it. And tbe officer, in the exercise of bis discretion, has made one rate of allowance for spirits transported under permits, and another for spirits transported under bonds for exportation and actually exported, and might make still another for spirits transported under bonds for exportation and then retained for sale, as these were. And how is this court to know what rate of allowance the Commissioner would make for cases like this % Or where does this court get its power to fix tbe rate of allowance, or make any other revenue regulation 1 I think it bas none.
Had the Commissioner made the regulation required by the statute for such cases as this, and then tbe claim for allowance in this case, under such regulation, been rejected, a different case would have been presented here, as to which I express no opinion. But in this case I tbink, for the reasons I have stated, that tbe demurrer should be sustained.