# THE COMMISSIONERS OF HIGHWAYS OF MANLIUS VS. IRA CHAFFEE AND GEORGE STONE.

Where an injury is done to a public bridge, not within the limits of any designated highway district, an action for such injury should be brought in the name of the Highway Commissioners—otherwise if the injury or interruption had occurred to the land upon which a highway runs. In such case an action for private damages can only be maintained by the owner of the fee, or by persons sustaining a particular injury; and the only remedy the public has, in case of such interruption, is by indictment, summary abatement, or penalty.

The State Legislature has full power to authorize the construction of a bridge over a navigable stream; and when such bridge is built as required by the Act, no one has a right to complain of it on the ground of mere inconvenience; and the exercise of this power cannot be questioned except by a paramount law of Congress. The ordinance of 1787 does not affect the question.

Persons running boats upon a navigable river, over which a bridge is built in pursuance of law, are responsible for injuries done to the bridge through their negligence of the management of such boats; and the time for a party to exercise care and skill is before he puts himself in the very road of casualty.

Negligence a mixed question of law and fact.

Vigilence and skill in the running of boats should be increased in proportion to the difficulties in navigating in particular localities.

Rule of damages.

*Allegan Circuit, March,* 1870.

*F. J. Littlejohn and J. L. Hawes,* for Plaintiff.

*Williams & Humphrey and J. W. Stone,* for Defendants.

*Charge of the Court,* BROWN J.—

GENTLEMEN OF THE JURY:—The plaintiffs in this action seek to recover of the defendants for an alleged injury to the bridge over the Kalamazoo river, in the township of Manlius, occasioned, it is alleged, by negligence in carelessly running the steamer "Aunt Betsey" [upon and against it, on the 12th day of July last.

Counsels for the respective parties agree that the Kalamazoo river is a public highway, and that steamboats and other watercraft are, and for a long time have been, engaged in the navigation of its waters, between Allegan and Saugatuck, in the transportation of freight and passengers from Allegan to Saugatuck, in the State of Michigan, and Chicago, in the State of Illinois; that it is a meandered river; that the steamer "Aunt Betsey" was, at the time of the alleged injury, engaged in the navigation

of said river in the transportation of freight and passengers from Allegan to Saugatuck and Chicago, by connection at Saugatuck with the propeller " Ira Chaffee ;" that Saugatuck is a port of entry at the mouth of the river.   Counsel further agree that, at the time of the alleged injury, the defendant Ira Chaffee was the sole owner of the steamboat, and the defendant George. R. Stone, her master, and that said boat was duly enrolled and licensed under the laws of the United States ; that the Kalamazoo river passes through the township of Manlius, as alleged in plaintiff's declaration ; that the said township is a duly organized township, under the laws of the State.   No point is made in this case as to the joint or several liability of the defendants, if they, or either of them, are found liable at all.   It is further stipulated that the bridge in question is not included in any organized road district in said township of Manlius, and that there is no claim made in this case, under the provisions of § 1113 and 1114, of the C. L., and to which I may have occasion to call your attention.

Every organized township in this State is a body corporate, having such powers and immunities as are prescribed by law ; and all suits and prosecutions by or against a township, in its corporate capacity, must be in the name thereof.  Sec. 2, Art. 11, Const., § 497 C. L.   The supervisor of each township is the agent of the township for the transaction of all legal business, by whom suits may be brought and defended, and upon whom all process against the township shall be served.  § 596 C. L.

The Commissioners of Highways have, by law, the care and superintendence of highways and bridges in their respective townships; and it is their duty to divide their townships into road districts.  § 991 C. L.

Paragraph 1113, C. L. makes it the duty of the Overseer of Highways to prosecute for injuries done to highways and bridges, within his district, and § 1114 makes it the duty of the Commissioners of Highways to bring suit for such injuries, if the Overseer neglects to do so.

You will observe that, thus far, we have referred to no law authorizing the proceedings in this case, as it is admitted that the bridge in question is not in any road district, such districts

as lie along the river being bounded by the *shore* of the stream, instead of by the *river*, as is usual—and in which case the districts would extend to the center of the stream. The Statute provides, § 4911, *C. L.*, that, in all cases not otherwise provided for, Commissioners of Highways of the several townships, and other officers therein enumerated, may bring suits " upon any contract lawfully made with them or their predecessors in their official character, or to enforce any liability, or any duty enjoined by law, to such officers or the body which they represent, and to recover damages for any injuries done to the property, or rights of such officers, or of the bodies represented by them." Paragraph 4912 provides that whenever any of the officers referred to in § 4911, shall bring suit by virtue of their office, it shall be in the name of their respective offices, except that when brought by the Supervisor, it shall be in the name of the township.

Paragraph 4914 assumes that action may be brought against the officers referred to in § 4911; and § 4915 informs us what those actions may be, to wit : to recover upon contracts which shall have been entered into, or liabilities incurred, by or in behalf of any county or township, by any officer thereof within the scope of his authority.

The Commissioners are a sort of *quasi* corporation. They derive no power whatever from the township, but from the people of the entire State, through their representatives in the Legislature. The Legislature create the office, and define, limit and restrict the duties and powers pertaining thereto. The electors of the township simply declare what persons shall discharge these duties, and, to some extent, may provide the means to enable the Commissioners to execute the trust which the law has reposed in them.

For the purposes of this suit, it would seem unnecessary to declare whether the bridge in question was the property of the township, of the county, or of the State. It has been built for the use of the traveling public as a highway, and over and upon which they have a right to pass.

The trust committed to the Commissioners is the care and superintendence of the highways and bridges of the township, or within the township.

"Towns, with us, are mere political organizations, created wholly by statute, for certain purposes of local government. They are vested with no franchises or special privileges for their own benefit. They have only such power as the statute confers, and are subject to no obligations, except such as as are derived from statutory provisions." 4 *Mich.*, 560. As a necessary incident to this local government, the law-making power has conferred upon the people of the several towns, the right to designate the various officers who are to execute the general law, directing certain things to be done within the corporate limits of such town, for the convenience and benefit of the people; and to give such officers such discretionary power only, as is necessary to carry on the trust reposed in them.

With this view of the case, I have no doubt but that the Commissioners of Highways are the proper party to bring suit for an injury to highways and bridges, not in any road district, if such an action can be maintained at all, by any body, or *quasi* corporation representing the public at large, or any political organization for local government.

The fee to the soil under the bridge is in the persons whose land is bounded by the river—8 *Mich.* 18, *overruling Wal. Ch.* 155; 10 *Mich.*, 125. But see 7 *Wallace*, 272—and it has been held, that, as the only interest which the public has in a highway, is the right of passage, and that if an injury is done to the freehold, a private action for damages can only be brought by the owner of 'the soil, or by persons sustaining a particular injury; and that, in case of interruption, the only remedy the public has, is by indictment, summary abatement, or penalty; and I think this must be recognized as the law. To determine, then, whether the law, thus announced, is applicable to this case, it is only necessary to determine whether the bridge in question belongs to the owner of the soil under it, or to any private individual. The place where the bridge stands, and the road leading to and from it, has been used as a highway ever since about the year 1842; so there can be no question but that the public have long since acquired a right to its enjoyment by prescription, so far as is necessary for the purposes of travel, even though such highway may not have been condemned to, or taken

for, public use in pursuance of any statutory provisions. But does the bridge erected on the soil of this highway, vest in the owner of the soil, whoever he may be, as soon as erected? or does it belong to the township or the public until abandoned? If the bridge is part and parcel of the realty, and if the title to the bridge is in the owner of the soil upon which it is erected, then no one, not even the public, could remove the bridge without compensation to the owner of such soil; but I have no doubt but that the proper authorities have a right to remove the bridge without compensating the owner of the soil. In short, I am of the opinion, and advise you, as matter of law, that the title to the bridge is not vested in the owner of the soil. This being so, he could not maintain an action for injuries done to it; and as the Commissioners of Highways, of the township of Manlius, are, by law, made the trustees of the public to have the care and superintendence of the bridge in question, and as no other provision is made by law to recover damages for injuries of the character complained of, I advise you that, in view of the provisions of § 4911 of the C. L., this action is properly brought in the name of the Commissioners. The next question is, are the plaintiffs entitled to recover in this case; and do the facts, disclosed by the evidence, show that the defendants are liable.

The bridge, to be within the provision of Act. No. 36, *Sess. L.* 1842, must be proved to your satisfaction, to be such an erection as is therein specified; otherwise, it is unauthorized; it must appear that the draw bridge is over the principal current of the river, and affords a free and unobstructed passage, when drawn, for all boats, rafts and all other water-crafts, navigating the river; and that the length of the draw, in excess of thirty feet, must depend upon the nature and class of vessels navigating the river; and if this bridge does obstruct the passage of boats, rafts, and other water-crafts navigating the river, it is unauthorized by the Act, and if unauthorized. the plaintiff cannot recover; but I advise you that mere occasional inconveniences do not, in contemplation of law, amount to obstructions. The Statue authorising the construction of the bridge, provides that it " shall be at least sixteen feet in length, and shall contain

a draw-bridge over the principal current of the river, at least thirty feet in length, affording a free and unobstructed passage, when drawn, for all boats, rafts, and other water-craft navigating said river." At the request of counsel, I advise you that " the true construction of the grant is that the draw shall be at least thirty feet in length. over the principal current of the river, and that if for any purpose the bridge is run irregularly across the current it is not a compliance with the Act, unless at least thirty feet of the principal current was left open without obstruction;" and I say to you that if you shall find that the bridge was built in accordance with this Act, and properly maintained, no one can question the right to construct and keep up such bridge, on any ground of public inconvenience. *Cooley Const. Lim.* 592.

In discussing the question as to what is meant by an obstruction to navigation. when applied to bridges, Judge Cooley, of our own Supreme Court, in his work on "Constitutional Limitations," p. 592-3 says: "But the bridge is not necessarily unlawful, because it may constitute, to some degree, an obstruction to commerce, if it is properly built, and upon a proper plan, and if the general traffic of the country will be aided rather than impeded by its construction. There are many cases where a bridge over a river may be vastly more important than the navigation; and there are other cases where, although the traffic upon the river is important, yet an inconvenience caused by a bridge with draws, would be much less seriously felt by the public, and be a much lighter burden upon trade and travel than a break in a line of railroad communication necessitating the employment of a ferry. In. general terms, it may be said that the State may authorize such constructions, provided they do not constitute material obstructions to navigation; but whether they are to be regarded as material obstructions or not is to be determined, in each case, upon its own circumstances. The character of the structure, the facility afforded for vessels to pass it, the relative amount of traffic likely to be done upon the stream and over the bridge"—These are some of the considerations to be taken into account in passing upon this question.

The burden of proof rests upon the plaintiffs. That is, the

COMMISSIONERS OF HIGHWAYS *v.* CHAFFEE AND STONE.

evidence upon which they rely must preponderate. You must find, in order to entitle them to a verdict, that the reasons for believing what they claim, are more weighty, more satisfactory than for believing otherwise. You must find that the injury complained of was occasioned through the carelessness and negligence of the defendants or their servants.

This question of negligence you are to determine, from all the facts and circumstances bearing upon the question. And in determining the degree of care and skill requisite in such cases, a few other considerations are proper.

At the request of counsel, I advise you that " bridges, highways, streets and railroads are means of commercial transportation as well as navigable streams. The commerce passing over a bridge may be greater than on the stream it spans. The legislature have power to authorize the erection of a bridge over one of the navigable streams of a State for which they legislate; and it is for the legislature to weigh and balance the various considerations belonging to the subject, the obstruction to navigation on the one hand, and the advantages to commerce on the other ; and to decide which shall be prefered, and how far one shall be made subservient to the other. `3 Wallace U. S. S. Court,` 5 *Amer. L. Reg* 637.

This power of the legislature may be exercised by general or special Acts, and, when exercised, cannot be questioned, except by a paramount law of Congress. *Idem.*

This power is not affected by the ordinance of 1787. That ordinance simply placed the navigable streams on a common law footing, as established by prescriptive user. 2 *Mich.* 519.

The legislature have passed upon the necessity and propriety of this bridge, upon its locality, dimensions and requisites, as a connecting link in the road from Allegan to Singapore. They have further determined that the obstruction to the navigation of the river, occasioned by such bridge, must be submitted to, as both lawful and unavoidable, and, if the difficulty and hazard of navigation be thereby enhanced, then a proportional increase in the requisite care and skill will be demanded.

The common-law rule is to be here strictly applied, " whoever to the injury of another, neglects a duty which he ought to

perform by law, becomes liable to compensate the injury or damage." The test is this: in order to avoid doing a damage to the property of another, a person is bound in law to such care in the use of his own property, as a prudent man would employ, under similar circumstances, if he were himself the owner of the property exposed to damage. 35 *Cal.*; *Amer. L. Reg. Vol.* 8 § 503.

The time for a party to exercise care and skill, is *before* he puts himself in the very road of casualty. If he fails to do so, it is of no consequence, in the eye of the law, whether he merely *misjudges*, or is obstinately reckless; his act is not *careful*, and he is to abide the consequence. Court of Appeals, N. Y. *Amer. L. R.* 86; and where an injury comes from the exclusive negligence of one party, he cannot shield himself from liability by calling it an accident. 23 *Penn.* 196; 16 *U. S. Dig.* 466.

The question of negligence or want of due care is usually a mixed question of law, and of fact, and so it would seem to be in this case. When so, it is for the jury, and must depend upon the situation and circumstances of the case. What would be ordinary care at the crossing of a highway, may be gross negligence at the crossing of Railroad. 4 *Zabris*, (N. J.) 824.

Bridges over rivers, built by authority of law, with proper draws, are not a nuisance. *Stockton*, (N. J.) 624, 17 *U. S. Dig.* 477. A draw bridge over navigable waters, is not necessarily an obstruction amounting to a nuisance. The hindrance is a public necessity. 5 *McLean*, 425.

When two easments have a common right to the same place, it is the right of the public that both shall be enjoyed, as not unnecessarily to interfere with, or abridge the the right of either. 29 *N. Y.* 315.

Precaution and vigilance, on the part of officers of vessels propelled by steam, should be increased, in proportion to the difficulties of navigation in particular localities, and in proportion to the dangers of collisions to which they are liable to expose the property of others. 1 *Newb.* 461."

If, after carefully weighing the evidence, and applying to it the rules of law, as given you by the court, you find the plaintiffs entitled to recover; you will then proceed to determine

how much you shall award them. The rule briefly stated is, "just compensation for the injury sustained;" and just compensation is that which will repair the injury, and such extra expenses as are necessarily incurred in consequence thereof while making the repairs; and such repairs should be made at once; and if the party whose property is injured, neglects to make those repairs at once, or as soon as the same can reasonably be done, they are not at liberty to charge their own negligence in this respect, to the persons committing the injury. I refer now, in applying this rule to this case, to the expense incurred for extra help in managing the draw, after the same might have been repaired, or to any other cost or charges which might have been avoided, had the repairs been immediately made. In other words, if the plaintiffs are entitled to recover, the defendants cannot be held liable for any neglect on the part of the plaintiffs to put the bridge in repair at once, it being only the direct result of the act, and not the remote, for which defendants can be made liable. *S. & R. on Neg.*, § 595, note 2.

You may, if you find the plaintiffs entitled to recover, take into the consideration the money they have necessarily expended, by way of repairs, to make the bridge as good as it was before, and what may still be necessary to make it as good as it was before, or rather what would have been necessary if the work had been done in the month of July, 1869, and the extra expense necessarily incurred to manage the draw, and facilitate travel over the bridge as well as under it upon the river.