ALBANY,
Dec. 1831.

The People
v.
Commission-
ers of High-
ways of Hud-
son, &c.

THE PEOPLE, on the relation of C. W. Bently, *vs.* THE COM-
MISSIONERS OF HIGHWAYS OF THE CITY OF HUDSON, and
THE COMMISSIONERS OF HIGHWAYS OF THE TOWN OF STUY-
VESANT, in the county of Columbia.

*Commissioners of highways* are not bound to *build bridges*, when *not in funds*
to defray the expense.

Where the probable expense of building a bridge would exceed $250, the sum
which the commissioners may cause *annually* to be raised for the improve-
ment of roads and bridges, they will not be required by *mandamus* to pro-
ceed in the erection of the bridge.

On a motion for a *peremptory mandamus,* the court do not look at the affida-
vits on which the *alternative writ* was founded ; their decision is made solely
upon the return to the alternative writ.

December 9.     MOTION for a mandamus.   A bridge over a stream called
Abraham's creek, in the county of Columbia, which stream
separates the city of Hudson from the town of Stuyvesant,
having fallen down or become unsafe to pass and repass, the
relator applied to this court for a *mandamus* commanding the
commissioners of highways of Hudson and Stuyvesant to *re-
build* the same.   An alternative mandamus was issued, to
which the commissioners made a return, and on the coming
in thereof, the relator, instead of formally demurring or plead-
ing to the return, elected to ask for a peremptory mandamus
at a *special term* of this court.   The only fact in the return to
the alternative mandamus, deemed necessary to notice, is that
the commissioners of highways of the town of *Stuyvesant* cer-
tify, that the expense of building *one half* of the bridge (the
proportion which would fall to the share of Stuyvesant, were
that town liable to build the bridge,) would be about $700,
and that they, the commissioners, *have no funds* whatever to
appropriate to that use.

C. *Bushnell,* for the relator.

A. L. *Jordan,* contra.

*By the Court*, NELSON, J. This is an application for a peremptory mandamus against the defendants, to compel them to rebuild the bridge over Abraham's creek, at Columbiaville in the county of Columbia; which application is founded upon the return made by the defendants to an alternative mandamus heretofore issued.

A question was made upon the argument, whether the court would look beyond the return into the affidavits upon which the alternative mandamus was granted in deciding this motion. The statute, 2 R. S. 586, § 55, provides that when a return shall be made to a mandamus, the person prosecuting may *demur* or *plead* to all or any of the material facts contained in it, to which the person making the return shall *reply*, *take issue* or *demur*, and that the same proceedings shall be had as if an action had been brought for a false return. If the party demurs to the return, he thereby admits the truth of the material facts alleged in it, and the question is one of law, and should be put upon the calendar for argument at term. If the facts in the return are denied, then an issue in fact exists, which must be sent down to the circuit for trial. In either aspect of the case, it is obvious the original affidavits upon which the motion for the alternative writ was founded, are out of the question. In this case the parties do not observe the formality of pleading upon the coming in of the return, but the relator applies at a *special term* for a peremptory writ, notwithstanding the return. He thereby admits the facts set forth in the return to be true, and contends that the law arising upon those facts entitles him to the mandamus. He cannot, therefore, look beyond the return to the affidavits, for the purpose of varying the legal effect of it. Is he dissatisfied with the return, he should move for a further return; if a full and complete return has not been made to all the points specified in the alternative mandamus, or if he disputes the facts, that question cannot be determined here, he must, on a proper issue made, go down to the circuit for trial. In this case the relator, in effect, demurs to the return. If the defendants shall be dissatisfied with the decision which shall be made, a record may formally be made up, upon which such

ALBANY,
Dec. 1831.

The People
v.
Commission-
ers of High-
ways of Hud-
son, &c.

ALBANY,
Dec. 1831.

The People
v.
Commission-
ers of High-
ways of Hud-
son, &c.

decision can be reviewed by a higher tribunal. But the rela-
tor loses this privilege by thus informally going to a hearing.
If he is desirous to reserve this right, as he is the actor, he
should plead formally, and put the case upon the calendar.
It may be proper that the original papers should be before the
court upon the hearing of the return to the alternative writ,
for the purpose of advising the court of the purport and intent
of the proceedings, but not to affect the facts contained in the
return; and this is all, as I understand it, that is meant by the
cases to which I have been referred. 1 Wendell, 320. 2 id. 256.

On the merits: the commissioners of highways in the sev-
eral towns in this state have the care and superintendance
of the highways and bridges therein, and it is their duty to
cause the bridges which are or may be erected over streams
intersecting highways, to be kept in repair. 1 R. S. 501, § 1.
By the *fourth section* of the same act, they may require monies
to be raised for the *improvement* of roads and bridges, but
they cannot compel the supervisors to raise, in any one year, for
the improvements necessary to be made on roads and bridges
in their town, over the sum of $250. This is the extent of
the means the commissioners have to carry into execution the
object intended by the mandamus, except the labor upon the
road district, which lincludes this bridge, which it was admit-
ted on the argument was not applicable to this object. Abra-
ham's creek, over which it is contemplated to build the bridge,
separates the town of Stuyvesant from the city of Hudson.
The city of Hudson, beyond the compact part, is subject
to the provisions of the revised statutes concerning highways.
Laws of 1829, p. 194, § 37.

The commissioners of Stuyvesant, in their return, state that
it would cost about the sum of $700 to build the *one half* of
the bridge, (which it is contended they ought to build,) and that
they have no funds wherewith to build or repair the same.
We have not deemed it necessary to examine all the questions
raised upon the argument of this case, nor the voluminous
facts contained in the return, because, upon the above view, it
would be an injudicious exercise of the power of the court to
grant the motion; even if it was the duty of the commission-

ers to build the bridge, we would not undertake to compel them to do so without funds, or the means of procuring funds. But I am satisfied that neither the highway act nor the common law imposes this duty upon them or their towns. The statute which makes it their duty to keep highways and bridges in repair, did not intend to extend that duty beyond their means, and the only means under their control is $250 per year, to be applied to *all the highways and bridges* in the town that require repairs. It was not intended by the act that the commissioners, (and of course not the towns, for they are the agents of the towns in this respect, and the only body, except the legislature, who can impose even the $250 per annum upon the towns,) should be subjected to the expense of erecting or repairing bridges of the magnitude of the one in question, without a special act of the legislature for the purpose. If the statute intended to impose that duty upon the towns, provisions would have been made in behalf of their agents for raising the necessary funds.

But it is said the common law makes it the duty of the towns to build the necessary bridges, and repair them. Even if at common law they are liable, (which they are not,) the statute controls it, by limiting the liability of the towns on this subject, and directing the mode by which that liability may be coerced. At common law, however, the *counties*, and not the *towns*, were subject to this duty, and the remedy for neglect was by indictment. *Bartlett* v. *Crozier*, 17 Johns. R. 452, *and the cases there cited.* It is no answer to say, that the statute, in making it the duty of the commissioners to cause the bridges to be repaired, has altered the common law, because this duty is subordinate to the means and provisions of the statute, and not to be regulated by the principles of the common law. This is in accordance with the opinion of Chancellor Kent in the case above cited; in page 451, speaking of the duty of commissioners in keeping in repair roads and bridges, he says; " This seems to be a general duty, applicable at all times, and in all places; yet when we come to read the details of their duty, we perceive it does not exist absolutely, but arises only when the commissioners have money in

hand, from forfeitures and penalties, or which have been paid; over to them, under the direction of the supervisors."

The practice of the legislature is also a confirmation of this, view of the case. Bridges like the one in question, are built by. corporations, or individuals, with the privilege of taking toll, and more frequently with funds raised by special acts of the, legislature upon the towns or counties. There are five or six instances of this kind in the Session Laws of 1830, p. 11, 41, 16, 215, 272. The supervisors of Ulster county were authorized to raise $1200—600 from each town lying on either side of Shawangunk Kill, to build a bridge over it. The motion for a peremptory mandamus is denied, but without costs.