[Kings General Term, December 7, 1857. *S. B. Strong, Emott* and *Birdseye,* Justices.]

———————•••———————

Smith *vs.* Wright and others, commissioners of highways of the town of Kent.

As to all bridges except those which are over streams intersecting highways, the duty of commissioners of highways is simply to give *directions* for their reparation. As to those erected over streams, the commissioners are bound to *cause* them to be kept in repair.

Where, in an action against commissioners of highways, to recover damages for injuries sustained by the plaintiff's horse, while crossing a defective bridge, the complaint charges the defendants with having negligently permitted " a certain bridge in said town, in a public highway," to be and remain in an unsafe and dangerous condition; but fails to allege that the defendants have omitted to give directions for the reparation of such bridge; or to allege that it was over a stream intersecting a highway, it will be held bad, on demurrer.

The obligation of commissioners of highways to repair bridges, is qualified—not absolute. It depends upon their being in possession of the requisite amount of public funds for that purpose. They cannot be required to advance their individual moneys.

Where it appears, either from the complaint or proof, not only that the commissioners had not the requisite funds in their possession to enable them to make repairs, but that they were not in fault for not having obtained such

funds, an action cannot be maintained against them, for damages caused by a defective bridge.

An averment in the complaint, of the possession of the requisite funds, by the commissioners, is necessary. And this averment must be proved.

Where a party seeks to recover damages of a public officer, for a neglect to perform a duty imposed upon him by statute, the complaint should state enough to show a violation of the duty.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint alleged that the defendants were, from the 1st day of May, 1854, and from that time until after the 1st day of September of said year, commissioners of highways of the town of Kent, in the county of Putnam; that as such commissioners it was their duty to give directions for the repairing of the bridges, and to cause the bridges which were in said town, over streams intersecting highways, to be kept in repair; and the plaintiffs averred that the highway labor of said town, together with the amount of moneys to which said commissioners were entitled for penalties, forfeiture commutations and fines, and the sum of $250 which they were authorized to have assessed, levied and collected on said town, for the necessary improvement of the roads and bridges in said town for the year 1854, was ample and sufficient to keep all of the roads and bridges in said town in repair, but that the defendants, neglecting their duties so as aforesaid imposed upon them, did not deliver to the supervisor of the town of Kent a statement of the improvements necessary to be made on the roads and bridges of said town together with the probable expenses thereof; and the plaintiff further alleged that on the 1st day of April,1854, and from that time until the 1st day of September in said year, a certain bridge on a highway in said town was so defective as to be unsafe and unfit to be crossed by teams and wagons, of all which the defendants had notice; and on the 30th day of August, 1854, a certain gray horse of the plaintiff, of the value of $150, while crossing the said bridge as he lawfully might in traveling a highway of said town, fell through and off of the said bridge, by reason of said defects, and was

Smith *v.* Wright.

thereby greatly injured, damaged, and killed and rendered of no value, to the damage of the plaintiff of $150. In a second count, the plaintiff further alleged, that on the 30th day of August, 1854, the defendants were commissioners of highways of the town of Kent in the county of Putnam, and that on that day a certain bridge in said town, on a public highway in said town, was defective, unsafe and dangerous to be crossed by horses, wagons and teams, of all which the defendants had notice; and being such commissioners as aforesaid, and having due notice of the unsafe and dangerous condition of said bridge, it was the duty of the said defendants to repair the same, but that the defendants, not regarding their duty, negligently permitted the said bridge to be and remain in such unsafe, defective and dangerous condition; whereby the plaintiff's horse of the value of $150, while crossing the said bridge in traveling on the public highway, was lamed, wounded, and rendered of no value and became sick, diseased, and in consequence whereof said horse died, to the plaintiff's damage of $150, for which sum he claimed judgment.

To this complaint the defendants demurred, on the ground that it did not state facts sufficient to constitute a cause of action.

After argument at special term, judgment was given for the plaintiff, upon the demurrer, with liberty to the defendants to withdraw the same, and answer the complaint, on payment of costs.

*C. Ga Nun,* for the appellants. I. The first count in the complaint is predicated upon the negligence of the defendants as commissioners of highways, in not delivering to the supervisor of their town a statement of the improvements necessary to be made on the roads and bridges in said town together with the probable expenses thereof. It is next alleged that the plaintiff's horse, by reason of a defect in a certain bridge in said town, was injured or killed; but there is no allegation that such injury to the horse was the consequence of the defend-

ants' neglect.   If such allegations were not material, the count is still *insufficient*.   It assumes that the supervisor of the town and the board of supervisors of the county would severally have done their duty, and would have raised the necessary money for repairs, if the commissioners had delivered the statement mentioned.   No action can lie upon such assumption.   No action on the case will lie where a casualty or contingency intervenes between the alleged cause and consequence, that might divide or change the liability.   The damages are too remote from the immediate act complained of, to furnish a cause of action against the commissioners.   (*Sedgwick on Damages*, 66.)   In the second count it is not averred that the commissioners had any funds with which to repair the bridge in question.   All the cases agree that commissioners of highways in such instances are not even liable to indictment, or subject to mandamus.   (*People* v. *Commissioners of Hudson*, 7 *Wend.* 477.   *Barker* v. *Loomis*, 6 *Hill*, 463.   *People* v. *Adsit*, 2 *id.* 619.)

II.   Commissioners of highways are in no case liable, in a civil action for damages to persons or property, resulting from the neglect to repair roads or bridges.   A mere quasi corporation, like commissioners of highways, having no franchises or privileges of a compensatory character or of private emolument, no powers coupled with a proprietary interest to them as such corporation to the exclusion of the public, and charged with duties purely of a public concern, and having no individuality except in the performance of such duties, is not liable in a civil action, in damages, for acts of misfeasance or non-feasance.   (*Bartlett* v. *Crozier*, 17 *John.* 451.   *Morey* v. *Town of Newfane*, 8 *Barb.* 645.   *Riddle* v. *Proprietors &c. on Merrimac river*, 7 *Mass. R.* 169.   *Russell* v. *Men of Devon*, 2 *T. R.* 667.   *Mower* v. *Leicester*, 9 *Mass. R.* 247.   *Bailey* v. *Mayor of New York*, 3 *Hill*, 531.   *Henly* v. *Mayor and Burgess. of Lyme*, 5 *Bing.* 91 ; *S. C.* 3 *Barn. & Ald.* 77 ; *S. C.* 1 *Bing. N. C.* 222.   *Mayor of New York* v. *Furze*, 3 *Hill*, 617.   *Hutson* v. *Mayor of New York*, 5 *Sandf.* 296, 305.)

Smith *v.* Wright.

III. The statute making it the duty of commissioners of highways to repair roads and bridges in their towns does not impose upon them that kind of duty a neglect of which would render them liable in a civil action for damages. But where the legislature has made any grants of benefits or franchises, and in the same act imposed certain public duties, and the grant has been accepted, the public may enforce the performance of those duties by indictment, and individuals peculiarly injured have their remedy by *action.* (*Baron Park's opinion in Henley* v. *Mayor of Lyme, supra. Mayor of New York* v. *Furze, supra.*) In all such cases the *duty* imposed is the *condition* of the grant; when one is accepted, the other is voluntarily undertaken. No such duty is imposed upon highway commissioners. It is a simple mandate of the legislature, directed to that class of officers for the purpose of indicating their especial functions. Commissioners, when elected by the people, do not even *accept* of their offices *voluntarily.* They are compelled to discharge the prescribed duties under a *penalty.*

IV. Every corporation which has been held liable in an action at law for damages, to individuals especially injured, whether it has been the state, a municipal corporation, or a private company, has been made liable on the ground of its private corporate character, and in respect to such liability has been viewed and treated the same as an individual. Contract express or implied, or the obligation of duty relating to or growing out of such contract, underlies every liability of corporations. (*Lloyd* v. *Mayor &c. of New York,* 1 *Selden,* 369. *Mayor of Albany* v. *Cunliff,* 2 *Comst.* 165. *Mayor of New York* v. *Furze,* 3 *Hill,* 312. *Bailey* v. *Mayor of New York, Id.* 531. *U. S. Bank* v. *Planters' Bank,* 9 *Wheat.* 904. *Hutson* v. *Mayor of New York,* 5 *Sandf.* 296. *Wilson* v. *Mayor of New York,* 1 *Denio,* 600.)

V. The statute making it the duty of commissioners of highways to repair bridges is a general one, and only designates certain duties to that class of officers in the general division of duties and responsibilities which the public interests

impose. The repairs are within the discretion of the commissioners, not only as to the amount of money to be expended, but as to the particular bridges to be repaired. No officer can be liable for bad judgment or indiscretion in the performance of a duty like this, which is *judicial* in its nature. (*Wilson v. Mayor of N. York, supra.*) When any class of officers is especially charged by any special enactment, or order of a superior power, to do a particular duty, to repair a particular bridge, or to expend in a certain way a particular sum of money, then it is possible that the *duty* to do is peremptory, and penal consequences will attach in case of neglect.

*G. Dean,* for the respondent. I. This being a general demurrer, the court will disregard all formal deficiencies of the complaint. (*Code*, § 145.)

II. The averments of the complaint are sufficient to sustain either an indictment or an action. 1. That defendants were commissioners. 2. Duty to repair. 3. That they had, or might have had necessary funds for repairs. 4. Neglect of duty. 5. Bridge out of repair from April to September, with defendants' knowledge. 6. Injury to plaintiff in consequence of said negligence. These facts thus stated, raise the question, whether commissioners of highways are liable to a private person who is injured by their neglect of duty. The plaintiff holds the affirmative of this question. On principle, independent of any direct judicial decision, or the dicta of a judge, there can be no doubt of the right to maintain the action. (2 *Comst.* 179, *per Strong, J.*) The declaration asserts that it was the duty of the defendants so to construct the bridge that it might be crossed without danger. If so, that would authorize a suit by any one to whom they owed such duty, and who had suffered by reason of its non-performance. *Mayor of N. York* v. *Furze,* (3 *Hill,* 617,) is an authority directly in point. The duty is averred. The court on the demurrer will not inquire into the law to see whether the duty is actually imposed upon defendants. But if it will, the statute imposes the duty.

(1 *R. S.* 501, 2, § 1, *sub.* 1, 4.)   For a correct summary of the laws, see 2 *Kernan,* 58.   These commissioners had the funds, or might have had.   The complaint states that $250, with the highway labor, was sufficient.   That they neglected to deliver the statement &c. required by 1 R. S. 502, § 4.   (*Adsit* v. *Brady,* 4 *Hill,* 630.   *Barker* v. *Loomis,* 6 *id.* 463.   *People* v. *Adsit,* 2 *id.* 619.)   The case in 15 *Barb.* 427 does not conflict with these cases.   8 *Barb.* 645 does not.   The remarks of Selden, J. are obiter.   The case of *Handy* v. *Mayor and Burgesses of Lyme Regis,* (5 *Bing.* 91, *cited in* 2 *Com.* 173,) is a case which went through all the courts, and establishes the true rule.

III. The whole question has been decided, so far as it is raised by this demurrer.   (*Hutson and wife* v. *Mayor of New York,* 5 *Sand.* 289.)   That case has been affirmed in the court of appeals, (5 *Seld.* 163.)   The demurrer in this case admits the duty, the possession of the means, and the omission to perform.   The learned judge who decided this case, overruled the demurrer, upon the decision of the case of *Hutson* v. *The Mayor &c. of New York,* and his decision should be affirmed.

*By the Court,* S. B. STRONG, J.   The statute provides that it shall be the duty of the commissioners of highways to *give directions* for the repairing of the roads and *bridges* within their respective towns, and to *cause* the highways and the *bridges* which are or may be erected *over streams* intersecting highways, to be kept in repair.   (1 *R. S.* 502.)   The duties are imposed in separate subdivisions (1 and 4) of the first section, and it would seem from that and their relative position, that the latter is variant from, or additional to, the former. The complaint does not allege that the defendants had omitted to give directions for the reparation of the defective bridge upon which the plaintiff's horse was injured.   They are charged in the second count, with having negligently permitted "a certain bridge in said town in a public highway" to be and remain in an unsafe, defective and dangerous condition; which is equivalent to an averment that they had failed to cause it

to be kept in repair. It is averred in the first count that it was their duty to cause the bridges which were in the town, over streams intersecting highways, to be kept in repair, and that a certain bridge on a highway in said town (being the bridge in question) was so defective as to be unsafe and unfit to be crossed; and that the defects were known to the defendants. When a complaint is made against a public officer, of a neglect to perform a duty imposed upon him by statute, the neglect should be clearly and distinctly stated. There is an omission in the description of the bridge, in this case, which is material and would, without an amendment, preclude a recovery. It is not stated that it is over a stream intersecting a highway. It is said to be on a highway, but it may have been over a pond, or a ravine. As to all bridges except those which are over streams, the duty of the commissioners was simply to give directions for their reparation; and the defendants are not accused of a neglect of that duty.

But, independently of the omission to which I have alluded, and which might, no doubt, be cured by an amendment, there is a more serious, and in my opinion an insurmountable, obstacle to the plaintiff's recovery. The defendants' obligation to repair any bridge was qualified, not absolute. It was truly remarked by Chief Justice Nelson, in the case of *The People* v. *The Commissioners of Highways of Hudson*, (7 *Wend.* 477,) that "the statute which makes it their duty to keep the highways and bridges in repair did not intend to extend that duty beyond their means." And the learned justice who decided this case at special term, cited with approbation the case of *The People* v. *Adsit*, (2 *Hill*, 619,) where it was decided that the existence of the funds or other specific means was a condition precedent to the obligation of commissioners of highways to repair bridges; and the case of *Barker* v. *Loomis*, (6 *Hill*, 463,) where it was held that commissioners of highways were not bound to build or repair bridges until the necessary funds were provided for that purpose. By their *means* I understand the funds in their possession—not those

Wright *v.* Smith.

which they might obtain at a future period. They cannot, and should not, be required to advance their individual moneys for public purposes. Their duties which the law compels them to perform are onerous enough without that. If our public officers would only faithfully apply what they actually receive, the people would have no cause to complain. Although that is a consummation devoutly to be wished, it is not always attainable. The pleader in this case seems to have been aware that the defendants could not be required to go beyond their official means, and he therefore avers, in his first count, that they had, or were entitled to, or could have had, but for their negligence, sufficient resources to keep all the roads and bridges in their town in repair. These are said to be "the highway labor of said town;" "the amount of moneys to which the commissioners were entitled for penalties, forfeitures, commutations and fines;" and the sum of $250 "which they were authorized to have assessed, levied and collected on said town for the necessary improvement of the roads and bridges in the said town for the year" in which the accident complained of happened. The commissioners had no power to apply the highway labor of the town, but only of the district in which the highway was located. It is provided in the 32d section of the act in relation to highways, (1 *R. S.* 508,) that no person, being a resident of the town, shall be required to work on any highway other than in the district where he resides; unless he shall elect to work in some district where he has any land. There may have been assessed in the same district highway labor sufficient, with the other means indicated, to have kept all the highways and bridges in repair, and yet there might have been a deficiency in the district where the bridge was to be repaired. The commissioners could only call into requisition the labor of that district, which might have been wholly inadequate. Then as to the "penalties, forfeitures, commutations and fines," it is not averred that they had been actually received, or were collectable. From the allegation that the defendants were

"entitled" to them, it is inferable that they had not been. collected. If they had been simply incurred or imposed, they were a most unreliable resource, and certainly not sufficient to impose a positive and onerous duty. The remaining specified fund was the $250 which the commissioners were authorized to have assessed for the necessary improvement of the roads and bridges in their town. It is evident that no assessment had been made, as the defendants are charged with neglect in not having delivered to the supervisor of the town a statement of the improvement necessary to be made, which was a requisite preliminary to the imposition of the tax. The allegations in the complaint show, however, that there was not only no neglect in this particular, but that it was absolutely impossible for the defendants to obtain the money, from their election up to the time of the accident. It is averred that they were commissioners from the 1st of May to the 1st of September, 1854, and that the accident occurred on the 30th of August, in that year. Now there could not be any assessment for bridges until the supervisors had their annual meeting, which was on the first Tuesday next after the general election in November of that year. (1 *R. S.* 366, § 3, *sub.* 3.) Until then there could not have been any efficient action in imposing the tax, and of course there was no negligence in not delivering the preliminary statement to the supervisor of the town by the 30th of August, when the accident happened. It would therefore seem, not only that the defendants had not the requisite funds in their possession, but that they were not in fault for not having obtained them.

In the case of *Hutson and wife* v. *The Mayor &c. of New York*, (5 *Sandf.* 289, *affirmed by Court of Appeals*, 5 *Seld.* 163,) the plaintiff recovered for the breach of an absolute and unconditional duty of the defendants to repair their streets; but the learned judge who gave the opinion of the court refers, certainly without disapprobation, to cases in which it had been held that public officers were not liable for omissions to keep highways in repair "where the powers have been so lim-

ited, to accomplish the object, that the court have considered their duty resting in too much doubt to render them liable; or that the duty was not imposed at all, by an omission to give them the means necessary to accomplish the object."

It is clear that there is no sufficient allegation, in the first count, that the defendants had the requisite funds to repair the bridge; nor is there in the second count any averment that they had any funds whatever.

The only remaining question is, whether an averment of the possession of the requisite funds was necessary. I have already alluded to the rule that where a party seeks to recover damages of one for a breach of official duty, he must state enough to show a violation of such duty. That rule is applied by Chancellor Kent in the case of *Bartlett* v. *Crozier*, before the court for the correction of errors, (17 *John.* 457,) in clear and forcible terms. That was an action against an overseer of highways, for damages caused by his not repairing a bridge. The declaration did not allege that the defendant had the necessary funds. The chancellor said the obligation of the defendant, if any, "arose from the means which he had in his power and from which alone the law deduced his duty. But the declaration does not state the means, and therefore it lays no foundation for the duty. This objection strikes me as fatal. Nor will it be sufficient to say that the facts creating his duty must have been shown on the trial, and that we are now, after verdict, to presume so. The court are never to presume a cause of action, even after verdict, when none appears." It is a good rule that whatever is essential to sustain the action should be averred in the complaint. The reasons are too palpable to require any specification. Now it would not be enough for the plaintiff, in order to sustain his action in this case, to prove that the defendants were the commissioners of highways of their town; that the bridge was out of repair, and known to them to be so; that they had not repaired it, and that the plaintiff's horse had fallen through it, and been thereby greatly injured. He must have

gone further, and shown that they had the requisite public funds; and if he had failed to do so he would have failed in his suit.

I am satisfied that the learned judge who decided this case, at the special term, erred, and that his judgment should be reversed with costs, and a judgment rendered for the defendant, upon the demurrer.   The plaintiff should be at liberty to amend his complaint within twenty days, upon the payment of the costs of the demurrer and the appeal.

[ORANGE GENERAL TERM, July 1, 1857.   *S. B. Strong, Birdseye* and *Emott,* Justices.]