## HYATT vs. THE TRUSTEES OF THE VILLAGE OF RONDOUT.

44　385
84h 514
44b 385
14ap158
44b 385
54ad 82

In an action against the trustees of an incorporated village, to recover for injuries sustained by the plaintiff in consequence of a highway being out of repair, the defendants can not be allowed to prove that the condition of the highway in question was worse in some other places, and especially in those portions out of the village bounds, than it was at the place of the injury.

Where a statute imposes upon the trustees of a village, as commissioners of highways, the duty of keeping a bridge, or a highway, in repair, the duty extends not merely to the floor of the bridge, or the road bed of a highway, but to proper guards or railings on their sides or borders, when necessary for the safety or protection of the public.

Where the trustees of a village are, by its charter, made commissioners of highways therein, if a road within the corporate limits is out of repair, and the trustees neglect to repair it, an absolute obligation and liability rest on them in regard thereto ; and for an injury sustained by an individual in consequence of their negligence the corporation is liable.

Although a statute provides that the money raised by the trustees of a village by assessment, for highway labor, shall " be expended under the direction of the board of trustees, in making and keeping in repair the highways, bridges and roads within the corporation, in such manner as they judge to be the most beneficial for the public," the trustees can not be excused from making an indispensable repair on the ground that the expenditure was

confided to their judicial discretion which can not be reviewed; at leas*
not without conclusively showing that all the funds in their hands had been
applied in the regular discharge of official duty.

Whether the place where an injury occurred required a guard or barrier, in
order to the safety and protection of travelers; and whether the defendants
were guilty of actual negligence in not constructing such guard or barrier,
are questions proper to be submitted to the jury, in an action against the
trustees of a village for negligence, and which it is their province to deter-
mine.

If there is enough testimony to go to the jury upon those questions, their
finding thereon, or on the amount of damages, can not be disturbed.

Commissioners of highways are not liable for the non-repair of highways
within their jurisdiction if they have not the funds for that purpose, and
are incapable of supplying themselves, by law, with such funds.

But whatever may be the rule in regard to commissioners of highways in
towns, a different and more stringent rule has been applied to corporations
and the trustees of villages.

Where it appeared in an action against a municipal corporation for neglect-
ing to repair a road, that the needed repairs might have been effected for
about the sum $50, and that the defendants had been provided, by tax,
with $2800, and had expended from $2000 to $3000; *held* that it could not
be said to have been conclusively shown that the defendants were without
funds, but that there was evidence from which the possession of funds might
be inferred.

MOTION for a new trial. This was an action brought by
the plaintiff, Stephen Hyatt, against the defendants,
the trustees of the village of Rondout, to recover for injuries,
which the plaintiff alleges he had sustained, whilst traveling
with a horse and wagon from Wilbur to Rondout, in con-
sequence of the road being out of repair, such road being
within the limits of the village of Rondout. The answer
was simply a general denial. The cause was tried at the
Ulster circuit on the 25th day of March, 1863, before Mr.
Justice PECKHAM and a jury. The facts of the case were as
follows: The plaintiff is a manufacturer of cigars, residing
at Newburgh. On the 5th day of April, 1861, the plaintiff,
with a wagon loaded with cigars, tobacco and furs, was
coming from Eddyville to Rondout. The road which he
traveled was a great thoroughfare, and the only road between
these two points, without going "a long way around." The

distance between Eddyville and Rondout is about two and a
half miles.   When he started from Eddyville it was dark;
before he reached Wilbur it began to rain; and when he
reached the South Rondout ferry, it was so dark he could
not see at all.   At the South Rondout ferry, and going
towards Rondout, the road leads up a steep hill.   About at
the top of the hill, the road takes a sudden turn.   At this
point, on the upper side of the road is a high bank, and on
the lower side also a steep precipitous bank, forty-one feet
high, at the foot of which the Rondout creek flows.   The
road is directly on the edge of the bank, and there was no
guard or fender there to prevent a wagon and horse from
going off.   The plaintiff got safely up the hill, and partly
round the turn, when his horse shied on account of some
boatmen below the hill swinging lights, backed, and went
over "into the creek with load and all."   The wagon was
broken, the cigars wet and damaged, the plaintiff was him-
self precipitated into the water and injured, and the horse
was also hurt.   The spot of the accident was within the
corporate limits of the village of Rondout, and the road at
that point was from twelve to fourteen feet wide.   The
village was taxed for work upon that road.   Rondout village
had a population of between seven and eight thousand, and a
guard at the point of the accident would have cost about
$50.   Defendants raised about $2800 highway tax in 1861,
and expended from $2000 to $3000.   The village of Ron-
dout was duly incorporated by an act of the legislature of this
state, passed April 4th, 1849.   And in and by said act it
was declared, "that the inhabitants residing therein, shall
henceforth be a body corporate and politic, by the name of
"the trustees of the village of Rondout."   (*Laws of* 1849,
*p.* 306.)   By an act passed March 17, 1857, it was enacted
as follows: "The village of Rondout shall be a separate
highway district, and the trustees of said village shall have
the powers, and discharge all the duties of commissioners of
highways therein.   All assessments for highway labor in

said corporation shall be paid in money instead of labor, at the rate of fifty cents for each day's work assessed, which assessment shall be made in the manner prescribed in the statutes concerning highways, by the board of trustees acting as commissioners of highways in said corporation, on or before the first day of June in each year; but the general exemption of farming land from said village tax by the act of incorporation shall not be construed to apply to highway tax; and the said assessment shall be collected of the several persons so assessed, by the collector of the corporation, by virtue of a warrant, to be issued on or before the 1st day of July in each year, by the board of trustees or a majority of them, and to be paid over by him to the treasurer of the corporation, taking his receipt for the same, and making returns to the said board of trustees in the time prescribed by law; said money to be expended under the directions of the board of trustees in making and keeping in repair the highways, bridges and roads within the corporation in such manner as they judge it the most beneficial to the public." (*Laws of* 1857, *vol.* 1, *p.* 243.)

At the close of the plaintiff's evidence, the defendants moved for a nonsuit upon the following grounds, which motion was renewed at the close of the case: 1. No proof that the road is a highway. 2. The plaintiff's own negligence contributed to the injury. 3. Commissioners of Kingston have concurrent jurisdiction. 4. Width of wagon track or road way not prescribed by law. 5. No law requiring defendants to put up a guard. 6. No proof of funds in the defendants' hands. 7. Expenditure of highway moneys submitted to the defendants' judgment and discretion. The motion was denied.

In submitting the cause to the jury, the court, among other things, directed them to pass upon the following questions, to wit: "Whether it was, or was not the duty of the defendants to put a guard at the point where the injury occurred — whether it was, or was not negligence in omitting

to do so." He further charged the jury, "that it was a question of fact for them to decide whether the negligence of the plaintiff contributed to produce the injury, and if it did in any way, then the plaintiff could not recover." He further charged that doubtless the defendants could have raised money enough to put a guard at that point, in addition to the other improvements, without greatly oppressing the inhabitants of the village. The defendants excepted to these portions of the charge as made, and also to various refusals to charge, viz : a refusal to charge that the defendants were not bound to put up a rail or guard ; and a refusal to charge that the defendants were not liable if they raised a reasonable amount of money by highway tax, and expended it according to their best judgment.

The jury found a verdict in favor of the plaintiff, for the sum of $125.

*T. R. Westbrook*, for the plaintiff.

*S. L. Stebbins*, for the defendants.

HOGEBOOM, J. The defendants offered to prove that the condition of the highway in question was worse in some other places, and especially those out of the village bounds, than it was at the place complained of. There is no ground upon which the admission of such evidence can be reasonably urged. If the defendants were more negligent elsewhere, it furnishes no reason for not holding them liable here. And if other authorities or public officers were more negligent than the defendants, it can not exempt the defendants from responsibility. Nor does it in any legitimate way tend to prove the plaintiff's negligence. On the contrary, if in traveling over the two miles of highway, more exposed and dangerous than that where the injury occurred, the plaintiff passed with entire safety, the fair inference is that he must have exercised great caution. The question of the plaintiff's negligence

can not thus be determined by comparison, but by the facts occurring at the time of the accident. The evidence was properly rejected.

The only other points raised in the case may be ranged under the two general and ordinary heads, to wit: 1. Were the defendants guilty of negligence or breach of duty producing the casualty. 2. Did the plaintiff's negligence contribute to the result. I will consider the latter question first.

The question of the plaintiff's negligence was fairly and properly submitted to the jury. It was a question for the jury. There was no such clear and decided evidence of his want of care as would have justified the court in nonsuiting him upon that ground. It is unnecessary to remark upon the evidence in detail, in this particular. I think no one can read it without being satisfied that it was one of those cases where in regard to the facts themselves and the proper inferences to be drawn from them in respect to this question, it was emphatically the province of the jury to decide.

The question of the defendants' negligence or breach of duty depends upon other considerations.

1. Was the building of a railing or guard at the place of the accident, if necessary for the safety of the public and of travelers, a duty resting upon the defendants, under their general obligation to keep highways in repair?

2. Was such a duty absolute and complete under all circumstances, or did it depend upon the fact of the defendants being in funds for such purpose, or upon their judgment and discretion, or other reasons?

3. Did the defendants in fact have such funds on hand, if that circumstance was necessary to be shown?

4. Do the facts of this particular case establish negligence or breach of duty on the part of the defendants so as to make them liable, or to make their liability a proper question to be submitted to the jury?

1. By section 3, of chapter 115, of the laws of 1857, " The village of Rondout shall be a separate highway district,

and the trustees of said village shall have the powers and discharge all the·duties of commissioners of highways therein." By 1 *R. S.* 502, § 1; it is made the duty of commissioners of highways "to give directions for the repairing of the roads and bridges within their respective towns," and "to cause the highways and the bridges which are or may be erected over streams intersecting highways, to be *kept in repair.*"

It would appear to be sufficiently obvious that the duty of keeping a bridge or a highway in repair extended not merely to the floor of the bridge or the road bed of a highway, but to proper guards or railing on their sides or borders, where necessary for the safety or protection of the public; but the point has been repeatedly adjudicated. (*Palmer* v. *The Inhabitants of Andover,* 2 *Cush.* 600. *Hayden* v. *Inhabitants of Attleborough,* 7 *Gray,* 338. *Norris* v. *Litchfield,* 35 *N. H. Rep.* 271.)

2. The question has been much discussed how far commissioners of highways are liable for the non-repair of highways within their jurisdiction, and it has been generally held that they are not so, if they have not the funds that purpose and are incapable of supplying themselves by law with such funds. (*Bartlett* v. *Crozier,* 17 *John.* 439. *People* v. *Commissioners of Hudson,* 7 *Wend.* 477. *People* v. *Adsit,* 2 *Hill,* 619. *Barker* v. *Loomis,* 6 *id.* 463. *Smith* v. *Wright,* 27 *Barb.* 621.) As a question of pleading, the cases are not decisive whether an averment of the possession of funds should be made in the complaint, leaving it to the defendants to set up the want of them in the answer, or not. *Adsit* v. *Brady,* (4 *Hill,* 630,) strongly intimates that the general allegation of neglect and breach of duty is sufficient, and that the commissioners are presumed to have the means of performing a duty with which the statute charges them; while *Smith* v. *Wright,* (27 *Barb.* 621,) holds that the complaint should contain a distinct averment of the possession of the requisite funds to make the repairs, and the want of it makes the complaint demurrable.

In the case now under consideration there is no such aver-
ment; and there was no demurrer to the complaint. The
answer is a general denial and does not set up the want of
sufficient funds. And all the proof in the case was taken
without objection, so far as this question is concerned, and
nothing appears in the case in regard to it, except that on
the motion for a nonsuit one of the grounds was that there
is no proof that the defendants had any funds with which to
make repairs or put up a guard; which ground the court
overruled.

But whatever may be the case in regard to commissioners
of highways in towns, a different and more stringent rule
appears to have been applied to corporations and the trustees
of a village. In this case the defendants are "the trustees
of the village of Rondout," and such is the corporate name
of the village. "The inhabitants residing therein (in the
village of Rondout) shall henceforth be a body corporate and
politic by the name of the trustees of the village of Ron-
dout." (*Laws of* 1849, *ch.* 199, § 1.) It was therefore the
corporation of the village of Rondout which was sued in
this case.

*Weet* v. *The Trustees of the Village of Brockport* is a
case in the supreme court, reported in a note in 16 *N. Y.
Rep.* 161. The opinion in that case concludes as follows,
(*pp.* 172, 173:) "It follows from the preceding reasoning that
if we regard the injury to the plaintiff as the result of mere
neglect to keep the highways of the village in repair, the
defendants would be responsible in this action, for such neg-
lect, upon the ground that their acceptance of the franchise
granted by their charter raised an implied undertaking or
contract on their part to perform that duty, which upon the
principles referred to, enures to the benefit of every individual
interested in such performance. But it is unnecessary to
revert to this doctrine to establish the responsibility of the
defendants in this cause, for the reason that the injury to the
plaintiff was not the result of a mere nonfeasance on the

part of the defendants, but was produced by their construction of the platform in question in such a manner as to constitute it a public nuisance." At page 170 the same judge says: "It seems to have been the opinion of Justice Beardsley in the case of *Wilson* v. *The Mayor of New York*, (1 *Denio*, 596,) and of Sandford, J. in *Hutson* v. *The same*, (5 *Sandf. Rep.* 289,) that municipal corporations are not liable in a civil suit for a mere neglect of their duty to repair highways; that they are subject to no greater responsibility in this respect than commissioners of highways in towns. *But it has been shown that where individuals or corporations assume obligations or duties for a consideration received from the public, they are liable for a neglect of those duties to any private citizen who may have been injured by such neglect.* This doctrine was applied in the case of *Mayor of Lynn* v. *Turner*, (*Cowp.* 86,) and *Henley* v. *Mayor of Lyme Regis*, (5 *Bing.* 91; 13 *Barn. & Adol.* 77; 1 *Bing. N. C.* 222, *S. C. in error*,) to municipal corporations."

It will be seen, on comparison, that the charter of the village of Brockport is not essentially different in this particular from the charter of the village of Rondout. (*Laws of* 1852, *p.* 672. 16 *N. Y. Rep.* 169. *Laws of* 1857, *p.* 243.) The same doctrine is essentially supported by the following cases: *People* v. *Corporation of Albany*, 11 *Wend.* 539; *The Mayor &c.* v. *Furze*, 3 *Hill*, 612; *The Rochester White Lead Co.* v. *City of Rochester*, 3 *Comst.* 463; *Lloyd* v. *The Mayor &c. of N. Y.* 1 *Seld.* 369.

I am aware that Justice Marvin, in *Peck* v. *The Village of Batavia*, (32 *Barb.* 634,) and *Cole* v. *The Village of Medina*, (27 *id.* 218,) undertakes to some extent to dispute the doctrine, and to curtail the application of the case of *Weet* v. *The Trustees of the village of Brockport*, but the principle and reasoning of the latter case was expressly adopted by the court of appeals in *Hickok* v. *The Trustees of the village of Plattsburgh*, (16 *N. Y. Rep.* 161,) and *Con-*

rad v. *The Trustees of the village of Ithaca*, (*Id.* 158.) In the latter case the court say, in reference to the case of *Hickok*, (*p.* 165,) "The decision of the court was that in the case of a village where the trustees were made commissioners of highways, *the corporation was liable for their negligence.*" (*Also p.* 172,) "Considering the building of the bridge, a corporate act performed by its agents and servants, the defendants are responsible, upon settled principles illustrated by several adjudged cases. (*The Mayor of N. Y.* v. *Furze*, 3 *Hill*, 612. *Rochester White Lead Co.* v. *City of Rochester*, 3 *Comst.* 464. *Hutson* v. *The Mayor of N. Y.* 5 *Seld.* 163.") See also *Storrs* v. *The City of Utica*, (17 *N. Y. Rep.* 104.)

I am of opinion, therefore, upon the authority of these cases, that if the road was out of repair and the defendants neglected to repair it, an absolute obligation and liability rested on the defendants in regard thereto.

3. But I am also of opinion that under the evidence in this case, and assuming that the defendants were not liable without the possession of adequate funds to make repairs, there is evidence in the case from which the possession of such funds might be inferred. It appears that the needed repairs might have been effected for about the sum of $50, and that the defendants had been provided by tax with $2800, and had expended from $2000 to $3000. It could not therefore be said to have been conclusively shown that the defendants were without funds.

It is further urged, that inasmuch as the statute provided that the money raised by assessment for highway labor was "to be expended under the direction of the board of trustees in making and keeping in repair the highways, bridges and roads within the corporation in such manner as they judge to be the most beneficial to the public," therefore this expenditure was confided to the judicial discretion of the trustees, which could not be reviewed by any other tribunal. But to this there are several answers.

Hyatt *v.* Trustees of the village of Rondout.

(1.) The obligation to repair, and the liability for neglect to repair, is absolute upon the corporation.

(2.) The provision in question establishes the rule of liability between the trustees in their official capacity and as agents of the corporation, and their principals, and not between the latter and the public or parties aggrieved.

(3.) The money to which the provision applies is that raised by assessments for highway labor, and not that derived from other sources, of which there may be a considerable amount.

(4.) The defendants can not be excused from making an indispensable repair, on the pretense of judicial irresponsibility at least without conclusively showing that all the funds in their hands had been applied in the regular discharge of official duty. Complete irresponsbility would enable the trustees to decline making any repairs whatever, under a pretended exercise of their discretion. This could never have been intended.

4. Whether the place where the accident occurred required a guard or barrier in order to the safety and protection of travelers ; and whether the defendants were guilty of actual negligence in not constructing such guard or barrier, were questions which were fairly submitted to the jury by the presiding judge, and which it was their province to determine. There was enough to go to the jury upon those questions, and their finding thereon, or on the amount of damages, can not be disturbed.

A new trial must be denied, and there must be judgment for the plaintiff, on the verdict.

MILLER, J. concurred.

GOULD, J. concurred in the result, but held the obligation to repair, to be absolute without reference to the possession of funds. New trial denied.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller,* Justices.]