ORTH vs. THE CITY OF MILWAUKEE.

*December 15, 1883 — January 8, 1884.*

*Municipal corporations — Injury to business from neglect to repair and maintain bridge — Pleading.*

1. In an action against a city for injury to the plaintiff's business and diminution in the value of his property, caused by the neglect to repair and maintain a bridge which, by its charter, the city is required to maintain,— the power of the city to raise money by taxation and the power to contract for work when there is no money on hand to pay for it, being limited by law,— the complaint must show that the city has sufficient funds to do the work, which can lawfully be applied thereto. It must also show that there has been an unreasonable delay in doing the work; and such delay will not be presumed from an averment that the city has neglected "for the space of about one year" to repair the bridge.

[2. Whether such an action can be maintained or not, is not determined.]

APPEAL from the County Court of *Milwaukee* County. Action to recover damages for the neglect of the defendant city to maintain a bridge. The complaint alleges that the city charter (Laws of 1874, ch. 184, subch. 9, sec. 7) contains the following provision: "Stationary bridges shall also be maintained at the expense of the city across the Milwaukee river, from Racine street in the First ward to Humboldt

Orth vs. The City of Milwaukee.

avenue in the Sixth ward," etc. Other allegations are sufficiently stated in the opinion. A general demurrer to the complaint was overruled, and the defendant appealed.

The cause was submitted for the appellant on the brief of *P. J. Somers*, City Attorney, and for the respondent on that of *Frank B. Van Valkenburgh.*

For the respondent it was contended that when the city accepted the charter it bound itself perpetually to maintain the bridge, and the plaintiff could maintain his action for the damage resulting from a neglect to perform such duty. *Lyme Regis v. Henley*, 3 Barn. & Ad., 77; 2 Dillon on Mun. Corp., secs. 674, 763, 778, 789, 802, 834, 836; *Lloyd v. Mayor of N. Y.*, 5 N. Y., 369; *Jones v. New Haven*, 34 Conn., 1, 13; *Mayor of N. Y. v. Furze*, 3 Hill, 612; *Wilson v. Mayor of N. Y.*, 1 Denio, 595; *Rochester W. L. Co. v. Rochester*, 3 N. Y., 463; *Mills v. Brooklyn*, 32 id., 489; *Bailey v. Mayor of N. Y.*, 3 Hill, 531; *S. C.*, 2 Denio, 433; *People v. Albany*, 11 Wend., 543; *McCombs v. Akron*, 15 Ohio, 476; *Conrad v. Ithaca*, 16 N. Y., 158; *Weet v. Brockport*, id., 161; *Barton v. Syracuse*, 36 id., 54; *Cutter v. Howard*, 9 Wis., 309; *Eilert v. Oshkosh*, 14 id., 586; *Kelley v. Milwaukee*, 18 id., 83; *Colby v. Beaver Dam*, 34 id., 285; *Walker v. Shepardson*, 2 id., 384; *Barnes v. Racine*, 4 id., 454; *Williams v. Smith*, 22 id., 594; *Pettibone v. Hamilton*, 40 id., 402; *Harper v. Milwaukee*, 30 id., 366.

Cole, C. J. We are of the opinion that the complaint in this case is fatally defective, and the demurrer to it should therefore have been sustained. The material facts stated are that the plaintiff is, and has for several years been, the owner of real estate situated on an island between the Milwaukee river and the canal in the Sixth ward of the city, with buildings thereon; that during that time he has been engaged in the business of keeping a saloon in one of said buildings, and in supplying customers in said city with ice

stored in other buildings; that his saloon and ice-houses are inaccessible from other portions of the city except by and over bridges which the city by its charter is required to and has, for many years, maintained over the river and canal. It is then alleged that the city has ceased to maintain any bridge across the Milwaukee river at the crossing from Racine street in the First ward to Humboldt avenue in the Sixth ward, as required by its charter, and has declared the bridge formerly maintained at that place to be unsafe,— as it in fact is,— and has caused the same to be obstructed so as to effectually stop the passage of horses and vehicles over the river at that place, and has for the space of about a year refused and neglected to repair and maintain the same, though often urged so to do; that in consequence of the failure of the city to maintain the bridge his business as a saloon-keeper and in supplying ice to his customers has been greatly injured and almost destroyed; that the value of his real estate has been diminished by the negligent and wrongful refusal of the city to repair and maintain the bridge at the place aforesaid.

It will be seen that the complaint places the liability of the city upon the ground that it has neglected to repair and maintain the bridge at the place named, though there is no averment that the city had any funds with which to make the repairs. It is said the charter imposes upon the city the duty of maintaining a bridge at that point; therefore, it is claimed, the city is liable in a civil action for damage resulting to an individual from its failure to perform that duty. But the conclusion by no means follows from the premise. As a matter of fact the charter not only requires the city to maintain the bridge in question, but also to keep up a large number of other bridges at different points in the city limits. Can every one who is discommoded in the transaction of his business, or whose property is depreciated in value, because all or any of these bridges are not maintained, bring his ac-

tion against the city for damages? Is this obligation of the city absolute without regard to the fact that it has no funds under its control with which to maintain and repair these bridges? The power of the city to raise money by taxation is restricted by its charter, as is its power to contract for work where there is no money on hand to pay for the same. Ch. 184, Laws of 1874. In view of the provisions of the charter it was absolutely essential that the complaint show that the city had sufficient funds to maintain or repair the bridge, and which could be lawfully applied to that purpose. See *State ex rel. Winslow v. Supervisors*, 16 Wis., 614; *People v. Adsit*, 2 Hill, 619; *Smith v. Wright*, 27 Barb., 621. The charter, which makes it the duty of the city to maintain the bridge, should not be so construed as to extend the duty beyond the means to perform it. It should appear that sufficient funds existed to make the repairs before the city can be justly chargeable with neglect in that regard. It is therefore clear that the complaint is bad, because it fails to show that the city had the requisite funds to do the work which it has omitted or failed to do. If the bridge was dangerous for travel, it was proper to put obstructions upon it, so as to stop all passage over it until it could be put in a safe condition.

But we think the complaint is defective for another reason than the one just stated. Even if the city had the necessary funds to repair the bridge, it does not appear that it has unreasonably neglected to do so. True, it is alleged that "for the space of about one year" the city has refused and neglected to repair the bridge. But we cannot presume from this averment that this was an unreasonable time to delay doing that work. The city may have had much work of this character to do. Obviously, the city authorities must have the discretion and right to determine what work should be first done, and to give a preference of one over another. The necessities of trade and commerce, the general public convenience, may be much more promoted by making one

improvement than another. The public interests must be consulted in such matters, and work done and expenditures made with reference to such interests. Now, as the plaintiff counts in this action on a breach of corporate duty, he ought to show clearly in what that breach consists. He is certainly required to make it appear that the city officials, having the means to repair the bridge, have been guilty of an unreasonable delay in doing the work before any liability would arise.

The complaint may possibly be amended, and the averments which we deem necessary supplied. If they should be, the important question will arise whether even then the action can be maintained on the facts. We have very serious doubts whether it can be,— whether the city would be responsible to the plaintiff for the injuries of which he complains. But we shall not express a definitive opinion upon that question until it is further discussed. The case was submitted on briefs. The point last suggested is not alluded to on the brief of the counsel for the city. It is only briefly referred to by plaintiff's counsel. Under these circumstances we do not feel called upon to examine and decide the question. The plaintiff's counsel makes a quotation from the work of Judge Dillon on Municipal Corporations, which he evidently thinks sustains his action. That learned author says: "The doctrine may be considered as established, that where the duty is a corporate one, that is, one which rests upon the municipality in respect of its special or local interests, and not as a public agency, and is absolute, and not discretionary or judicial in its nature, and is one owing to the plaintiff, or in the performance of which he is specially interested, the corporation is liable in a civil action for the damages resulting to individuals from its neglect to perform the duty, . . . on the same principles and to the same extent as an individual or private corporation would be under like circumstances." 2 Dillon on Mun. Corp., (3d ed.), § 980, (778).

Whether this case can be brought within the general principle of law there stated is a question we will not now decide. It is sufficient that the complaint is defective for the reasons already stated.

*By the Court.*— The order of the county court overruling the demurrer is reversed, and the cause remanded for further proceedings.