| 46 | 41 |
| 124a | 662 |

RICHARD FARMAN, Respondent, *v.* THE TOWN OF ELLINGTON, Appellant.

*Action against a town, under chapter 700 of 1881 — commissioner of highways — duty of, to keep the highways in repair — 1 R. S., 501–503, secs. 1–6, as amended by section 7 of chapter 503 of 1880 — the duty rests upon the commissioner to see that his directions to an overseer are complied with — as to whether negligence can be imputed to an officer de facto, because of a failure to act.*

Upon the trial of this action, brought against the defendant, The Town of Ellington to recover damages for personal injuries to the plaintiff, and to his horse and carriage, occasioned by the defective condition of a highway on which he was driving, it appeared that a portion of the supporting bank of the road, which was what is commonly known as a dug-way, had been washed out by the action of the water of a creek, causing a defect in the road at a place where the wheel of the plaintiff's carriage went off, resulting in his horse and carriage and himself being thrown into the creek.

*Held,* that sections 1–6 of 1 Revised Statutes, 501–503, as amended by section 7 of chapter 503 of 1880, imposing upon the overseer of highways the duty to keep in order the highways in his district, do not relieve the commissioner of highways from the duty imposed upon him by the same sections of seeing that the roads are kept in suitable repair, and for that purpose of giving the requisite directions to the overseer to use the means provided by the statute to supply the work necessary to do it, and also to use reasonable diligence to see that his directions are executed; and that his neglect to discharge this duty gives a person injured by it a right of action against the town under the provisions of chapter 700 of 1881.

The wash-out which produced the defect in question occurred on August twenty-third, and the accident occurred on the evening of September fifth. The commissioner was advised of the washout shortly after it happened and requested a person to see the overseer and have him fix the road, and evidence was given tending to prove that such person saw the overseer on the same day and told him what the commissioner had said, although this was denied by the overseer, who testified that he first learned of the defective condition of the road on September third, and that he repaired it on September seventh.

*Held,* that, as the repair did not require a great amount of work, a verdict of the jury finding that the commissioner had been guilty of negligence should be affirmed.

.That a request to charge that if the jury found that the commissioner sent directions by the person named to the overseer to repair the road, and that such directions were communicated to him, the commissioner's duty was discharged, was properly refused as the care of the highway imposed upon him by the statute required him to ascertain within a reasonable time whether the directions given by him had been properly executed.

*Quære,* as to whether, if the commissioner was merely an officer *de facto,* his mere failure or omission to act could be charged to him as negligence

APPEAL by the defendant from a judgment entered on the verdict of a jury at the Chautauqua Circuit, and from an order denying a motion for a new trial, made upon a case and exceptions.

The action was brought to recover damages for personal injuries to the plaintiff, and for injury to his horse and carriage, occasioned by the defective condition of a highway on which he was driving on the evening of September 5, 1885. It was what is commonly known as a dug-way road, and a portion of its supporting bank had been washed out by the action of the water of a creek at the foot of a hill, causing the impairment at the place where the wheel of the plaintiff went off, taking him and his horse and carriage into the creek. This defect in the road was produced August twenty-third, and was not repaired until September 7, 1885. The plaintiff had a verdict on which judgment was entered.

*Wm. H. Henderson,* for the appellant.

*A. C. Wade,* for the respondent.

BRADLEY, J. :

At the commencement of the trial the sufficiency of the allegations of the complaint to constitute a cause of action was challenged by the defendant's counsel, and his exception to the denial of the

motion to dismiss the complaint, it is here insisted, was well taken. So far as it alleges negligence of the town and its agents and assistants, it fails to allege any cause of action, because no duty rests upon the town to maintain the highway within its limits. The statute which creates liability of towns for injuries resulting from defective highways confers upon them no power or duty in that respect, but the supervision remains as before, with the commissioners of highways, and it is their negligence which gives the right of action against their respective towns. (Laws of 1881, chap. 700; *Bidwell* v. *Town of Murray*, 40 Hun, 190.) While the apparent theory, as alleged, of the cause of action is that it arose from the default of the defendant in not repairing the highway, there is sufficient in the allegation charging negligence of its officers to embrace that of the commissioner of the town, in that respect, as the cause of the injury suffered by the plaintiff. And in that view the complaint is deemed sufficient for the purposes of the trial.

The question whether the commissioner of highways was chargeable with negligence was raised by motion for nonsuit; and it is contended that no cause of action is supported by the evidence. The construction given to the statute makes such distinction, in respect to the manner of the exercise of the duties of the commissioner as applied to bridges over streams intersecting highways, and other portions of the highways, as to impose upon him directly the duty of keeping the former in repair, while the ordinary repairs of the latter may, to some extent, be devolved upon the overseers of highways, but those are subordinate officers acting under the direction of the commissioner, who has the general supervision of the subject of the repair and maintenance of the highways. (*Bartlett* v. *Crozier*, 17 Johns., 439; *Smith* v. *Wright*, 27 Barb., 621; *Day* v. *Day*, 94 N. Y., 159.) The statute provides that the commissioners of highways "shall have the care and superintendence of the highways and bridges," and it shall be their duty: "1. To give direction for the repairing the roads and bridges within their respective towns." "4. To cause the highways and the bridges which are or may be erected over streams intersecting highways to be kept in repair." "5. To divide their respective towns into road districts, and appoint in each an overseer of highways, whose duty it shall be to keep in order the highways of his district, and, when so required by

the commissioner, to warn all persons assessed to work on highways in it to come and work thereon, and to collect all fines and commutation money, and to execute all lawful orders of the commissioner." (1 R. S., 501–503, §§ 1–6, as amended by Laws 1880, chap. 503, § 7.) And whenever the assessment made by the commissioners is insufficient to keep the road in repair, the overseer may make a further assessment upon the residents of his district not exceeding one-third the number of days of the original assessment. (Id., 503, § 8.) By the system thus provided for the ordinary repairs of highways, exclusive of bridges over intersecting streams, the work is to be furnished through the action of the overseers, who are officers. They are to warn the inhabitants of their districts to do the work, and they are also to expend for the same purpose moneys derived by them from commutations and fines. It is through those means that the commissioner may by his directions cause such repairs to be made. And for failure to perform any of the duties required of them by the statute, or which may be enjoined upon them by the commissioners of highways the overseers are subjected to a penalty. (Id., 505, § 16.) Their duty to make repairs does not depend upon the direction of the commissioners to do it. The statute charges them with it. (*McFadden* v. *Kingsbury*, 11 Wend., 667.) But this does not relieve the commissioner from the duty of seeing that the roads are kept in suitable repair, and for that purpose to give the requisite directions to the overseers to use the means provided by the statute to supply the work necessary to do it, and to use reasonable diligence to see that his directions are executed, because upon him rests the care and supervision of the highways, and his negligence alone probably furnishes the remedy to those suffering injuries occasioned by their defective condition. (*Bartlett* v. *Crozier*, 17 John., 437.) At all events that is so for the purposes of actions against towns under the act of 1881, before referred to. The question whether he is chargeable with negligence must depend upon the circumstances of each case. He must be permitted to rely somewhat upon the performance by the overseers of their duties. They are provided to take care of the roads within their localities, while the general care and supervision of the commissioner extends over those of the entire town. He cannot embrace all of them constantly within his personal inspection. And to what extent he may depend

upon the official instrumentalities provided for by the statute is a question worthy of some consideration. The cases to which our attention has been called related to defective bridges, which, as has been seen, are distinguished from other portions of highways. Ordinarily, it would seem that when advised of a defective condition of a highway, the reparation of which is within the means at the command of the overseer, and having given to the latter direction to repair it, the commissioner may, for the time being, rely upon the performance by him of such duty, because it is through such direction and its execution that the work is to be done; and it cannot be supposed that the commissioner will constantly be in attendance during its progress. (*Smith* v. *Wright*, 27 Barb., 621.) Yet, in view of the superintending care imposed upon him, he should be required to use reasonable diligence to learn whether the overseer has proceeded with the performance of the work, and if he has not, to take measures, so far as he may, to enforce the execution of such direction. The wash-out which produced the defect in question occurred on August twenty-third, and the commissioner was advised of it shortly after, and requested a person to see the overseer and have him fix the road; and there is evidence tending to prove that such person the same day saw the overseer and told him what the commissioner had said.

The plaintiff received his injury September fifth, and the road remained unrepaired until September seventh. The repair did not require a great amount of work. The jury were permitted to conclude that the road ought to have been repaired prior to the time of the plaintiff's injury, and that by the exercise of reasonable diligence it may have been. The evidence to the effect that direction from the commissioner to fix the road was communicated to the overseer is contradicted by the latter, who says he first learned of its defective condition when he saw it on September third. And it does not appear that the commissioner took any means to ascertain whether his communication reached the overseer, or whether or not any steps had been taken to repair the road prior to the time of the accident. The evidence, we think, was sufficient to send the case to the jury upon the question of the negligence of the commissioner of highways. And it is not important whether that did or did not depend upon evidence given after the plaintiff rested and the

motion for nonsuit was denied, as in either event the exception will be deemed ineffectual. (*Painton* v. *N. C. R'y Co.*, 83 N. Y., 7.)

The court was requested and declined to charge the jury that if they found that the commissioner sent directions by the person named to the overseer to repair the road, and that they were communicated to him, the commissioner's duty was discharged. And exception was taken by the defendant. The court then charged that it did not wish to be understood that it was the duty of the commissioner to look further, but it was a question for the jury to determine whether or not he had discharged his whole duty under the circumstances. And upon the further request of the defendant's counsel the court also charged that if such directions were communicated to the overseer it was his duty to make the repair, and that his neglect to do it not coming to the knowledge of the commissioner does not impute negligence to the latter. The charge, as made in that respect, was as favorable to the defendant as it was entitled to, and there was no error in the refusal to charge as requested. While the duty of the commissioner was to direct the overseer to make the repair, it cannot be said as matter of law that his duty ended there. Ten days after he communicated to a third person his directions for the overseer, the injury complained of was suffered, and in the meantime nothing was done by way of repairing the road. The care of the highways imposed upon and assumed by the commissioner may require of him something more than mere direction to his subordinate officers. Although he may have the right to assume that they will obey his mandate, it is consistent only with his duty that he ascertain within a reasonable time whether they have been executed. He is charged with the care and superintendence of the highways as well as with the duty of directing their reparation. The former may not be wholly discharged by the performance of the latter. The responsibility is with him so far as it comes within the exercise of reasonable care. The overseers are subject to the directions of the commissioners in the line of their duty and to his actions for penalties for refusal or neglect to execute them. This is designed, so far as it may, to enable the commissioner to require the performance by them of their duty, and to render his care and superintendence effectual for the proper maintenance of the highways in suitable condition for the public use. The defend-

ant's counsel excepted, so far as related to roadways, to the charge "that the statute required the commissioner to use active oversight and vigilance in ascertaining the condition of the highways and knowing their condition, and if out of repair to cause them to be put in repair." This charge was not error. It did not involve the question of degree of activity and vigilance or to what extent they may be qualified by dependence upon the subordinate officers. The duties of the commissioners are those of reasonable diligence and vigilance in their performance by way of care and superintendence relating to the roadway, as well as to bridges over streams intersecting highways, with the distinction before observed in respect to the manner of their exercise which goes to the degree of personal vigilance. (*Bostwick* v. *Barlow*, 14 Hun, 177; *Babcock* v. *Gifford*, 29 id., 186; *Hover* v. *Barkhoof*, 44 N. Y., 113.) The evidence of conversations had by witnesses with the commissioner to which exceptions were taken, was competent to show his knowledge of the defective condition of the highway and was received solely for that purpose.

But it is said that it had not appeared that the person was commissioner of highways of the town, and for that reason it did not appear that any duty rested upon him as such. It is true that there was no evidence given on the trial tending to prove that he was such officer, other than that he had acted as such from February to November, 1885, and that in March he issued to the overseer of the district in which the injury occurred, his warrant as commissioner containing the assesment of inhabitants for work to be performed on the roads in that district, and the usual direction. This may have been insufficient to establish that he was a commissioner *de jure*, as there was no evidence that he was reputed to be such officer or that he had colorable right to the office. If he was merely an officer *de facto* he had no duty to perform and could not be chargeable for mere failure to act or omission to act. (*Olmsted* v. *Dennis*, 77 N. Y., 378.) This question may have been urged here with some force if the objection had been specifically taken at the trial. This was not done. While the objection taken may have embraced this within it, the attention of the court and of counsel was not called to this point by the ground of the objection to the evidence. If it had been, it may be that it would have been obviated

by further evidence. And no such question appears by the record to have been raised by the motion for nonsuit or otherwise at the trial.

We have examined all the exceptions and none of them seem well taken. The question of negligence of the plaintiff was one of fact. The verdict was·supported by the evidence.

The judgment and order should be affirmed.

SMITH, P. J., and CHILDS, J., concurred.

Judgment and order affirmed.